78 255
103 430

NANNIE R. MACOMB, EXECUTRIX, ETC., v. JOHN F. PRENTIS.

*Mortgages—Outstanding liens—Right of mortgagee to purchase— Agreement—Equity.*

A mortgagor assigned to the mortgagee, as *additional* security for the payment of the mortgage debt, a mortgage in process of foreclosure, which was to be completed by the assignee, in whom the title to the mortgaged premises was to be perfected, and who was to hold said premises as additional security for said debt, and for the actual costs of such foreclosure and sale, and for any taxes or assessments levied or assessed upon the mortgaged premises *after* the assignment, all of which the assignor agreed to pay. It was further provided that in case of his failure to make such payment the assignee might purchase or pay the same, and be repaid therefor on the sale of said assigned mortgage or of the premises covered thereby. Provision was made for the re-assignment of the mortgage, or the conveyance to the assignor of the title secured on such foreclosure sale, on payment of the original mortgage debt, and any costs, taxes, or assessments which the assignee might have paid by virtue of the agreement; and it was expressly provided that the assignee should not be liable for any loss or damage caused by the sale of said premises for the non-payment of taxes or assessments. The assignee completed the foreclosure, and bid in the mortgaged premises, and for the purpose, as claimed, of protecting his mortgage interest purchased outstanding tax titles, *not* covered by the agreement, and paid taxes charged against the mortgaged premises at time of the assignment. The original mortgage debt was satisfied by the foreclosure of the original mortgage, and in a suit brought by the assignee to foreclose the agreement contained in said assignment for the foreclosure costs, and for taxes assessed *after* the making of said agreement, which he had paid, he also sought to recover the money paid for said outstanding tax titles and taxes; and it is held that before such a liability on the part of the assignor could exist, or a lien be created, a special agreement would have to be made, which contract a court of equity cannot create for the parties.

Appeal from Wayne. (Gartner, J.) Argued October 16, 1889. Decided December 28, 1889.

Bill to foreclose lien on real estate. Complainant appeals. Affirmed. The facts are stated in the opinion.

*William J. Gray,* for complainant.

*H. G. Holmes* and *B. T. Prentis,* for defendant.

SHERWOOD, C. J. This suit was commenced by John N. Macomb, and a decree for partial relief made for complainant. Complainant appealed to this Court, and died before the same was argued here, and the cause, by order, has been duly revived by Macomb's executrix.

From the record it appears that on October 26, 1882, John N. Macomb obtained from John F. Prentis a bond, secured by a mortgage upon lands in Mackinac and Chippewa counties, for the sum of $14,000. This mortgage was foreclosed, and the property was sold under the decree, in October, 1885. Prior to this sale Macomb assigned his entire interest in this bond and mortgage and decree to the Sands & Maxwell Lumber Company, and was paid the full amount of the bond and decree, thus extinguishing Prentis' debt to Macomb.

The bond was further secured at the time of its execution by an assignment of another mortgage given by David M. Richardson to John F. Prentis on property in Detroit, described as lot 10, and the east half of lot 9, of the Baker farm, and which was then in process of foreclosure. Briefly, this agreement provided that the Richardson foreclosure should be carried to completion, and the title perfected, upon a sale, in Macomb, who should hold the mortgaged land as additional security for the bond; and then continues as follows:

"4. The said Prentis shall pay the actual costs of such foreclosure and the sale, and any and all taxes or assessments hereafter levied or assessed on said mortgaged premises; and in case said Prentis shall contract for the sale of said mortgage, or the premises derived from such

foreclosure, the said Macomb, on receiving the net proceeds derived therefrom, shall assign said mortgage, or convey any title derived by him on said foreclosure, to whomsoever the said Prentis may direct, and the net proceeds shall be applied on said $14,000 mortgage; and, in case said Prentis shall neglect to pay such costs and taxes or assessments on said premises, the said Macomb may purchase or pay the same, and be repaid therefor on the sale of said mortgage or said mortgaged premises, with interest, and the remainder to be applied on said $14,000.

" 5. The said Macomb agrees that he will hold said mortgage, or the title derived on the foreclosure, and on the payment of the said $14,000 mortgage, and any costs, taxes, and assessments that said Macomb may have paid by virtue of this agreement, that he will assign to said Prentis said mortgage, or convey to him any title derived by him on such foreclosure, freed and discharged from any liens or incumbrances caused by or through him, except that said Macomb shall not be liable for any loss or damage caused by the sale of said premises for the non-payment of taxes or assessments.

" 6. It is agreed that in the foreclosure and sale under said mortgage the said Macomb shall bid the full amount decreed to be due thereon, unless the said Prentis shall direct the bidding of a less sum, and that no charges shall be made for the foreclosure of said mortgage, and that said Macomb shall be allowed for the cash disbursements made on such foreclosure and sale, and for taxes paid by virtue of this agreement."

The assignment was dated October 27, 1882, and this security was excepted from the operation of the assignment to the Sands & Maxwell Lumber Company. The foreclosure of the Richardson mortgage went to sale, and the land was bought in by Macomb, who holds the title, which in his hands is in the nature of a mortgage. The purpose of the bill in this case is to foreclose the agreement contained in said assignment, for the amount of the foreclosure costs and taxes, or the moneys complainant has paid on account of the same.

There seems to be but little dispute that, if the com-

plainant is entitled to a decree for any of the amounts claimed, it should go for the taxable costs, and for the taxes paid by complainant which have been levied since the date of the agreement. These include the State and county taxes of 1882, and the city, State, and county taxes of 1883, 1884, 1885, 1886, and 1887, and the decree below gave complainant a lien for all these amounts. Complainant, however, insists that she is entitled to foreclose for a number of prior taxes, the title to which vested in her under these circumstances.

On October 27, 1882, when the agreement was executed, the Richardson lots were subject to absolute tax titles for the city taxes of 1877 to 1880, and for the State and county taxes of 1877, 1878, and 1879. There were also unpaid the city taxes of 1881 and 1882, and State and county taxes of 1881, which were then either payable or redeemable. In the protection of his mortgage interest, Macomb, in 1883, purchased the city tax title of 1882, and paid the State and county taxes of 1881. On April 24, 1884, all right of redemption had expired upon the other tax sales, and the title under them was outstanding in the estate of Robert P. Toms, to whose executrix Macomb paid $598.74, and obtained the tax titles covering the city taxes of 1877 to 1881, and the State and county taxes of 1877 to 1879, both inclusive. At this time default had been made in the $14,000 bond, and foreclosure of the Mackinac county mortgage had been commenced. The amount thus paid, $598.74, included the county tax of 1880, which was afterwards refunded; to Macomb. Including this, the original taxes, with the interest charged by the State on unpaid taxes, amounted to over $550. So that Macomb paid less than $50 bonus to the tax title holders.

Complainant's counsel admits that these taxes for 1877 to 1880, levied upon the Richardson lots, and for which

titles had accrued, and for the State and county taxes of 1877, 1878, and 1879, did not fall within the agreement which was dated October 27, 1882, and that at that date there was due and unpaid city taxes of 1881 and 1882, and the State and county taxes for 1881, which were redeemable or payable. For the expense of getting up these tax titles, and for the last named taxes paid by the complainant, complainant invokes the aid of the equitable principles of this Court, which permit a mortgagee to add to his original lien the expense he has been subjected to in securing outstanding liens to protect his mortgage against adverse and paramount claims. In 1882 the law permitted the lienholder to pay a returned tax, and collect the amount paid with his lien. This was certainly the case with all taxes returned after the act went into effect, and this right is claimed by complainant independently of the statute, and authorities are cited to sustain this position,[1] and it is further claimed that this view of the case is not contravened by the contract itself.

I do not think the taxes now claimed for in this suit could be required of Macomb under the agreement; neither were they paid by virtue of the agreement; and it will be discovered, by reading the fifth clause, that it was only for such that Macomb was to be allowed as precedent to conveying; neither was Macomb to be liable on account of said premises being sold for taxes. Before a liability on the part of Prentis could exist or a lien be created for the taxes previous to the date of the agreement, which had matured into a title in favor of Macomb, a special agreement for that purpose would

---

Counsel cited *Sidenberg v. Ely*, 90 N. Y. 257; *Broquet v. Sterling*, 56 Iowa, 357; 2 Jones, Mort. § 1137; *Harper v. Ely*, 70 Ill. 581; *Davis v. Bean*, 114 Mass. 360; *Bank v. North*, 4 Johns. Ch. 370; *Comstock v. Michael*, 17 Neb. 288; *Eaton v. Tallmadge*, 22 Wis. 526.

have to be made, and a court of equity cannot create such a contract for the parties, and the court was right in so holding.

Objection was taken at the trial, which was had in open court, to the testimony of Browse T. Prentis, because the facts testified to were equally within the knowledge of Toms, the assignor of Macomb of several of the tax claims which were not allowed by the circuit judge in his decree; but as it very clearly appears that the testimony objected to had no influence with the circuit judge in giving construction to the contract between the parties, and upon that the circuit court reached his conclusion in the case, no harm was done by receiving the testimony, whether correctly or not.

As to the question of costs on dismissing the bill as to B. T. Prentis, the defendants, nor either of them, did not appeal, and they are not in a situation to raise the question. The decree for aught that appears in the record, should be affirmed.

The other Justices concurred.