REGENTS OF THE UNIVERSITY OF MICHIGAN v. AUDITOR GENERAL.

1. CONSTRUCTION OF STATUTES—MAXIMS.

It is a general rule of construction that an act passed for a particular purpose is not abrogated by general legislation, sufficiently broad to include it, unless the intent to do so is clear, under the maxim, "Generalia specialibus non derogant."

2. UNIVERSITY FUND—RATE OF INTEREST.

2 How. Stat. §§ 5360, 5361, providing for the payment of interest on the university fund, impliedly adopted the rate of 7 per cent. per annum, being the legal rate of interest fixed by the general statute then in force, and said rate was not changed or affected by the amendments of 1887 and 1891 reducing the legal rate of interest to 6 per cent.

*Mandamus* by the Regents of the University of Michigan against Stanley W. Turner, Auditor General, to compel the payment of interest on the "university fund" at the rate of 7 per cent. Submitted January 28, 1896. Writ granted April 21, 1896.

*Hanchett & Hanchett* (*B.'F. Graves*, of counsel), for relators.

*Geer & Williams*, for respondent.

Hooker, J.    Certain lands granted by the Federal Government to the State as an endowment to the State University having been sold by the State, the fund resulting therefrom constitutes the university fund.    A similar provision exists for primary schools, while State land grants for the endowment of the State Normal School and the Agricultural College have resulted in funds for the support of these institutions.    It is the custom of the State to pay interest upon such funds annually, the same having been paid from specific taxes. See Const. art. 14, § 1. Act No. 114, Laws 1845, provided for the payment of interest upon the primary school fund, at a rate therein specified, viz., 7 per cent.    This act was repealed in express terms.    See Rev. Stat. 1846, p. 736.

Rev. Stat. 1846, p. 216, § 8, provides for interest for the university and primary school funds in the following language:

"Upon all sums paid into the state treasury on account of the principal of the university or primary school funds, except where other provision is or shall be made by law, the treasurer shall compute interest from the time of such payment, or from the time of the last computation of interest thereon, to the first Monday of April in each and every year, and shall give credit therefor to the university or primary school interest fund, as the case may be, and such interest shall be paid out of the general fund."

Laws 1847, p. 173, Act No. 107, makes provision for interest upon these funds from the annual state tax upon

railroads.    Laws 1851, p. 116, Act No. 99, § 10, provides
for the payment of interest upon the various educational
funds.    See, also, Laws 1853, p. 85, Act No. 60; Laws
1855, Act No. 73; Laws 1857, Act No. 56.

Laws 1859, p. 397, Act No. 143, being 2 How. Stat. §
5360, provides:

"That the auditor general be, and he is hereby, re-
quired to credit to the university interest fund, interest
from and after the thirty-first day of December, eighteen
hundred and sixty, on the entire amount that has hereto-
fore been, or may be hereafter, received by the State for
university lands sold or contracted, and to draw his war-
rants upon the state treasurer for the same, who is here-
by required to pay the same to the treasurer of the uni-
versity upon his application therefor, from time to time,
as the said interest may accrue, and be required for the
use of the university."

Section 5361 is as follows:

"The people of the State of Michigan enact, that upon
all sums paid into the state treasury upon account of the
principal of any of the educational funds, except where
the provision is or shall be made by law, the auditor gen-
eral shall compute interest from the time of such pay-
ment, or from the time of the last computation of interest
thereon, to the first Monday of April in each and every
year, and shall give credit therefor to each fund, as the
case may be; and such interest shall be paid out of the
specific taxes."

Thus, it will be seen that at no time has the law fixed
the rate of interest to be paid upon these funds in express
terms, except by Act No. 114 of the Laws of 1845, which
was repealed, as stated, the next year.    During all of the
time since 1845, up to the present year, 7 per cent. upon
the several funds has been paid by the State, and, up to
the year 1887, 7 per cent. has been the rate of interest
established by the usury laws.    In 1887 the general stat-
ute was changed, and the legal rate of interest upon
money was then fixed at 6 per cent., where it has since
remained.    See Act No. 138, Pub. Acts 1887; Act No.
156, Pub. Acts 1891.

The relators ask a writ of *mandamus*, to compel the payment of 7 per cent. upon the university fund. The question before us is, therefore, a construction of the statutes referred to. It appears to be conceded that the several laws providing for the payment of interest upon the university fund contemplated its computation at 7 per cent., that being the legal rate. It is a general rule of construction that, where an act is passed for a particular purpose, it is not abrogated by general legislation, sufficiently broad to include it, unless the intent to abrogate it is clear, under the maxim, "*Generalia specialibus non derogant.*" *Earl of Derby* v. *Commissioners*, L. R. 4 Exch. 226; *Kidston* v. *Insurance Co.*, L. R. 1 C. P. 546; *Conservators of River Thames* v. *Hall*, L. R. 3 C. P. 419; Endl. Interp. Stat. § 223, and cases cited; *Crane* v. *Reeder*, 22 Mich. 322. This would seem decisive of this case, unless we are to say that the legislature intended that the legal rate should be paid upon the fund, whatever that rate might be. We think it more reasonable to say that, when those acts were passed, the intention was to pay interest at the then-existing legal rate, which was 7 per cent., and that the general statute was made a part of these several acts by reference, which reference must necessarily be implied, as there could be no other means of determining the rate intended. The rule in such cases is that such adoption does not include subsequent additions or modifications of the statute so taken, unless it does so by express intent, and that the repeal of the statute adopted will not affect its operation as a part of the statute adopting it. *Schlaudecker* v. *Marshall*, 72 Pa. St. 200; *Nunes* v. *Wellisch*, 12 Bush, 363; *Knapp* v. *City of Brooklyn*, 97 N. Y. 520; *In re Main Street*, 98 N. Y. 454; *Allen* v. *Mayor, etc., of Savannah*, 9 Ga. 286; *U. S.* v. *Paul*, 6 Pet. 141; *Kendall* v. *U. S.*, 12 Pet. 524; *Clarke* v. *Bradlaugh*, 8 Q. B. Div. 69; *Darmstaetter* v. *Moloney*, 45 Mich. 621.

The latter case is as closely analogous to this as it

could well be without raising the identical question before us.   In that case the charter of the city of Detroit provided that "the assessor * * * shall be, and is hereby, vested with the powers and duties of supervisors, as provided by the laws of this State," etc.   It will be noticed that this does not specially refer to any particular statute or statutes, but in a general way it adopts such as prescribe the duties of supervisors, and it cannot be doubted that the effect would have been the same had the words "as provided by the laws of this State" been omitted, as they would have been clearly implied.   It might as well be said in that case that the legislature intended that the duties of the assessor should change, like those of supervisors, with changes in the law fixing the duties of the latter, as to say in this case that the legislature intended that the rate of interest to be paid upon the educational funds should change from time to time, with changes made in the usury laws, because the act providing for the payment of such interest failed to fix a specific sum as the rate to be paid, or to specifically mention the then-existing law fixing the legal rate of interest, which was unnecessary.   This court held in the case cited that changes in the duties of supervisors did not affect the assessor of Detroit, saying:

"The case falls under the rule that a piece of legislation for a particular city, which adopts, under general words of reference, a specific regulation in a separate general law, is not to be taken as adopting prospectively the future alterations in the provision of the general law so appropriated, unless the intent therefor is express or strongly implied."

It is reasonable to suppose that the framer of the interest law had not in mind the question of interest upon educational funds, and, if he had, there is nothing to call attention to that subject in the bill or title; and while we do not say that this would be fatal to the bill, or exclude the respondent's contention, if the intent were manifest,

the construction here given to this act is in harmony with the spirit of the Constitution, which provides safeguards against concealed or unintended legislation.

These principles seem to us conclusive of the question, and the writ will issue as prayed, but without costs.

The other Justices concurred.