HOPKINS *v.* SANDERS.

1. MORTGAGES—TAXATION—FORECLOSURE—LIEN FOR TAXES PAID.
   While there is no question that a mortgagee may pay taxes assessed against the mortgaged premises after the execution of the instrument in order to protect his lien, and may add the amount so paid to the decree of foreclosure; as to taxes assessed before that date, the right is not so clear, but if the equities of the case warrant it the mortgagee may be allowed taxes paid to cancel liens existing at the time of the execution of such mortgage, and may include the amounts in the foreclosure decree.

2. EQUITY—PRACTICE—COSTS—FEES—DECREE.
   Act No. 267, Pub. Acts 1911, fixing the fees of the registers in chancery payable before default decree is entered, at two

dollars, repeals local acts conflicting with it, including Act No. 259, Local Acts of 1883, which provided for a larger fee in Wayne county.

Appeal from Wayne; Donovan, J.   Submitted June 13, 1912.   (Docket No. 98.)   Decided October 2 1912.

Bill by John Hopkins against Josephine Sanders for the foreclosure of a mortgage.   From a decree for complainant, defendant appeals.   Modified and affirmed.

*Palmer & Palmer*, for complainant.

*Willis G. Clarke*, for defendant.

STEERE, J.   This case involves a computation of the amount due on a mortgage foreclosure and taxation of costs.   In the foreclosure proceedings defendants appeared by attorney, but did not answer.   The bill was taken as confessed, and decree rendered upon testimony taken in open court.

The mortgage was given on December 21, 1908, for the sum of $1,602.15, with interest at the rate of 6 per cent. per annum.   At the time the mortgage was executed, there were taxes standing against the property, which the mortgagee discovered must be paid before the mortgage would be recorded.   Defendant made no payments upon said mortgage, of either principal or interest, and, after said mortgage was given, paid no taxes upon the property mortgaged.

The bill of complaint for foreclosure was filed on February 15, 1911, over two years after said mortgage was given.   Upon hearing the testimony in open court, a decree was granted October 16, 1911, for principal, interest and taxes paid by complainant, amounting to $2,179.21. The amount due on the mortgage, exclusive of taxes, with interest thereon, was $1,866.77.   The mortgage contains no tax clause expressly authorizing the payment of taxes by the mortgagee and adding them to the mortgage lien.

The taxes included in the amount for which decree was given were: Tax list of city taxes 1906, $65.39, paid August 27, 1909; special sidewalk assessment prior to date of mortgage, $130, paid September, 1909; city taxes 1907, $31.09; city taxes 1908, $29.92; city taxes 1909, $39.10—less an item of $6.13, being the State and county taxes for 1908 going to make up the total of $29.92 withdrawn as having been included in the amount of the original mortgage. In the taxation of costs was included an item of $4 for "*pro confesso* decree fee."

Defendant's solicitor having duly appeared at the hearing and objected to said items of taxes being included in the amount decreed, and having moved for retaxation of said decree fee, an appeal from said decree was duly taken; and it is urged that the decree of foreclosure was excessive to the extent that it erroneously included the amounts paid for discharge of taxes which were against the property when said mortgage was given, and the decree fee should have been only taxed at $2, under Act No. 267, Pub. Acts 1911, instead of $4 as taxed.

It is stated by text-writers, supported by numerous authorities, to be a general rule of law that if the owner of mortgaged premises fails to pay taxes or assessments imposed thereon, and which it is his duty to pay, the mortgagee may pay such taxes to protect his lien and add the same to the amount of the mortgage, although the mortgage contains no clause expressly authorizing him to do so (Jones on Mortgages [6th Ed.], § 1134; Wiltsie on Mortgage Foreclosures, § 452); but it is the contention of defendants that in this State, in the absence of statute or an express agreement between the parties, a mortgagee cannot pay taxes to relieve the mortgaged property of a tax lien which occurred prior to the execution of the instrument, and add it to the amount of his mortgage, citing *Pond* v. *Drake*, 50 Mich. 302 (15 N. W. 466), and *Macomb* v. *Prentis*, 78 Mich. 255 (44 N. W. 324).

Section 3876, 1 Comp. Laws (1 How. Stat. [2d Ed.] § 1821), provides:

"Any person having a lien on property may, after 30 days from the time the tax is payable, pay the taxes thereon, and the same may be added to his lien and recovered with the rate of interest borne by the lien."

Section 220 of the charter of the city of Detroit provides:

"Any person having a lien on property may pay the taxes thereon, and the same may be added to his lien and recovered with the rate of interest borne by the lien."

Under the foregoing statutory provisions, the right to add the item of $39.10, for the city taxes of 1909, accruing subsequent to the date of the mortgage, to the amount of the mortgage cannot be questioned.

It is claimed, however, that the right to subsequently pay taxes existing and easily ascertained at the time of giving the mortgage differs from the right to pay taxes not then existing, but which are subsequently imposed, and by default of the mortgagor are allowed to run and imperil, not only his title, but the mortgagee's lien, and that the statute has in effect been construed as only applying to the latter.

It is the contention of complainant that, even conceding such construction to be correct, it is well within the powers of the court of chancery to give mortgagees full protection in equity for the payment of tax liens existing at the time of the making of the mortgage, irrespective of the statute or agreement, when, as in this case, it is the duty of the mortgagor to pay the taxes, and, as the result of his failure to do so, it becomes imperative for the mortgagee to pay them, in order to avoid losing his entire lien. The case law upon that subject is not abundant or entirely in point in this State.

In the case of *Pond* v. *Drake, supra,* a bill was filed and decree of foreclosure granted for $14.92, entirely made up of an amount paid for taxes which had accrued before the date of the mortgage. Subsequent to the time of giving the mortgage, Mrs. Drake, the defendant, purchased the land covered by it. When she purchased, the tax sale

for the item in dispute appeared to have been canceled by redemption. She paid the mortgage in full, in two installments, without any notice of complainant's claim for any taxes he had paid. She appeared and defended the foreclosure suit for the amount, claiming, among other things, that the taxes were not regular. The court held that the equities were with the defendant, and the lien could not be maintained. To reach the question of equities, the court reasoned and equivocally held that the statute authorizing payment of the tax and adding it to the lien did not apply, saying:

"It is certainly open to question whether this statute applies to cases where the mortgage was given after the taxes had been already returned, * * * and whatever may be the equities outside of the statute, there seems to be no occasion for any statutory protection. The statute appears to be designed to reach cases where at once, on the return of the taxes, the lienholder may have a right to pay them. * * * It seems to us that, if a mortgagee accepts a mortgage on lands already subject to returned taxes, his rights must arise from such equities as are independent of the statute.

" Where the mortgage is silent on the subject, the utmost that can be fairly claimed is that complainant may in some cases obtain equities out of action necessary for his own protection. When and to what extent such equities may arise need not now be considered, because all mere equities may be waived or lost by the conduct of parties, and, in our opinion, no such equities remain here. * * * Assuming that under these circumstances the lien could be enforced against her at all, she was entitled to know what complainant's claim was before she paid the mortgage. * * * By suppressing the fact that he held this claim, complainant acted prejudicially towards defendant. * * * We think it is not equitable now to enforce it against the land."

The most it can be claimed the court held in that case, of general application, is that the statutory protection was not needed for, and did not apply to, payments of taxes returned before the time of giving the mortgage, leaving such cases open to equitable inquiry.

In *Macomb* v. *Prentis, supra,* an original mortgage debt had been satisfied by foreclosure of the original mortgage, and a suit was subsequently brought by an assignee to foreclose an agreement contained in an assignment of the mortgage for foreclosure costs and taxes assessed after the making of the assignment. Complainant also sought to recover money paid for outstanding taxes and tax titles. It was held that in such case, before the assignor would become liable or a lien be created, there must be a special agreement. The parties had undertaken to make costs of foreclosure, taxes, and assessments a matter of special agreement, and omitted to cover the subject-matter in controversy. This agreement was sought to be enforced by Macomb, as a mortgage, by foreclosure. He virtually stood in the position of mortgagee and contracted to convey the property, "freed and discharged from any liens or incumbrances caused by or through him, except that said Macomb shall not be liable for any loss or damage caused by the sale of said premises for the nonpayment of taxes or assessments." The court said:

"Before a liability on the part of Prentis could exist or a lien be created for the taxes previous to the date of the agreement, which had matured into a title in favor of Macomb, a special agreement for that purpose would have to be made, and a court of equity cannot create such a contract for the parties."

In the case of *Bennett* v. *Nichols,* 12 Mich. 22, cited by counsel for defendant to sustain the proposition that courts of equity cannot create a lien on real estate to secure a personal debt, the court said:

"We have not been able to discover upon what principle a court of equity can create a lien on real estate to secure a personal debt, not contracted on its credit, and not charged on it by agreement. There may be cases where, from the nature of the transactions between the parties, rights spring up which ought to be held binding on specific property."

It has been generally held that the payment of taxes and assessments by a mortgagee on property covered by his mortgage, to protect his lien and incidentally protect the title of the mortgagor, grows out of a transaction between the parties, which, from its nature, creates an equitable lien.   The authorities cited do not foreclose that question in this State.

In *Vaughn* v. *Nims*, 36 Mich. 298, Justice CAMPBELL states, as a general proposition—

"And there can be no doubt of the propriety of allowing a party to protect his mortgage interest against taxes."

We think that in case of mortgage foreclosure on land liable to taxation, where taxes have been assessed against it which the mortgagor neglected or refused to pay, and the mortgagee has paid them, a court of equity may declare a lien, if the taxes are not shown to be unjust, inequitable, or illegal, and no special circumstances are shown giving rise to equities in favor of the defaulting mortgagor.   The fact that he defaulted in the payment of his taxes before giving the mortgage is not an equitable consideration.   The obligation to pay taxes rests primarily on the owner.   He knows whether he has paid them or not.   When he seeks a loan and offers mortgage security for the same on property he owns, he tacitly represents that it is security in his possession, in which he is primarily interested, which he will care for and protect; that he will perform his plain duty in paying the taxes and conserving such security, even though he may not legally warrant the title.

In this case the mortgagor, having secured the money and solemnly promised to repay it, has since enjoyed its use and possession and use of the property for over three years, has during that time ignored her obligation, paid no taxes, paid no interest, paid nothing on the principal, allowed the bill to be taken as confessed, now makes no tender or offer to pay and redeem, and interposes in a court of equity a technical defense which, if she prevailed,

would be of no value to her, except to continue her possession for a time longer, unless she should redeem. The equities in this case are with the complainant. An equitable lien may exist, independent of any express agreement, arising out of general considerations of right and justice, honest dealing, and duty as applied to the subject-matter, the relations of the parties, and the transaction as a whole. We think it was within the power of the court to declare the taxes paid by complainant (on property in which both were interested, and for the protection of both) an equitable lien, to be added to the amount of the mortgage, and to include the same in the decree of foreclosure.

The *pro confesso* fee, to which objection is made as excessive, was manifestly taxed under Act No. 259 of the Local Acts of 1883, entitled "An act to provide for the payment of fees to the county of Wanye, in suits and proceedings in the circuit court for said county." Section 1 of this act provides that there shall be paid to the county clerk, for the use of the county in suits and proceedings in the circuit court, various enumerated fees, among which we find the following:

" In any suit or proceeding in chancery, a decree fee of four dollars, if there be no answer or other pleadings filed by the defendant.   *   *   *"

In 1911 the legislature passed general Act No. 267, entitled "An act to prescribe the fees of clerks of courts and registers in chancery," the material parts of which, as applied to the question before us, are as follows:

"SECTION 1. Before any suit at law or in chancery shall be commenced in any circuit court or in the superior court of Grand Rapids, etc.,   *   *   *   there shall be paid to the clerk or register of said court by moving party, etc.   *   *   *

" SEC. 2. Before the entry of any final judgment by default in an action at law or *pro confesso* decree in chancery, there shall be paid to said clerk or register the sum of two dollars."

" SEC. 8. The sum or sums paid as aforesaid shall be held to be in full for all clerk, registry, entry, judgment

and decree fees in any suit from the commencement thereof to and including the issuance and return of execution or other final process."

Section 9 provides what disposition shall be made of certain fees so received in the counties where clerks receive a salary, and also in counties where they do not receive a salary.

"SEC. 10. All acts or parts of acts contravening the provisions of this act are hereby repealed."

The provisions of the foregoing acts, relative to *pro confesso* decree fees, are in direct conflict; the local act for Wayne county fixing the fee at $4, and the general act of subsequent date fixing it at $2. The general rule in such cases is that the later act repeals the former.

Counsel for complainant contend that Wayne county has, by local legislation, had a special fee rate in force for many years, distinct from other counties, which, under local conditions, was deemed advisable by the legislature and has been found satisfactory; that no reason for changing the same existed, and it cannot be presumed that the legislature, in framing a general fee system for the State at large, had in mind or intended to nullify the local act; that the general act should be read as silently excluding Wayne county, which has been already distinctly provided for by special enactment—citing *Crane* v. *Reeder,* 22 Mich. 322; *Gordon* v. *People,* 44 Mich. 485 (7 N. W. 69); *Connors* v. *Iron Co.,* 54 Mich. 168 (19 N. W. 938); *In re Bushey,* 105 Mich. 64 (62 N. W. 1036); *Regents of the University* v. *Auditor General,* 109 Mich. 137 (66 N. W. 956).

While these cases are illuminating, none of them is parallel or controlling. From them can be deduced the general principles that repeals by implication are not favored; that there is no presumption of an intention on the part of the legislature to repeal a law where no reference is made to it in a later act, unless the intent is clear, and where an act is passed for a particular purpose it is

not to be held as abrogated by subsequent general legislation, which may be sufficiently broad to include it, unless the intent to abrogate is so clear and distinct as to be unavoidable.

We think the cases nearest to the point in this State are *People* v. *Wenzel*, 105 Mich. 70 (62 N. W. 1038), and *People* v. *Furman*, 85 Mich. 110 (48 N. W. 169). In the former case a prior local act gave the city of Kalamazoo power to regulate the liquor business. The general liquor law, passed some years later, provided a uniform rule throughout the State, and the court held that the former local act was repealed. In *People* v. *Furman, supra*, there was a conflict between the charter of the city of Adrian and a general law. The court there said the general act "expressly repeals all acts or parts of acts in any wise contravening or inconsistent with its provisions. It is clear, therefore, that it was the intention of the legislature to provide a uniform rule, applicable to all alike, for the conduct of this business."

An examination of the authorities on repeals by implication shows clearly a tendency to sustain local acts as silently excluded from the operation of subsequent general acts, where the legislative intent is not so clear and positive as to render it impossible to do so; and only where the implication of intention to repeal necessarily flows from the language used, and discloses a repugnancy between its provisions and those of the former law so positive that it is impossible to reconcile the two by any fair construction, will repeal by implication be declared.

" The question of implied repeal being, after all, a question of implied intention, where the legislature expressly declares what effect, in the way of repeal, an act is intended to have, there is no room for any implication." Endlich on Interpretation of Statutes, § 203.

In the concluding section of said Act No. 267, "the legislature expressly declares its effect, in the way of repeal," is to abrogate "all acts or parts of acts contravening the provisions of this act." In the absence of any

qualification, "all acts" would naturally include both local and public, general and special, acts. There can be no question but that the local act fixing the decree fee at $4 contravenes the provisions of the later act fixing it at $2.

"When two statutes are so flatly repugnant that both cannot be executed, and we are obliged to choose between them, the later is always deemed a repeal of the earlier." *Brown* v. *County Commissioners*, 21 Pa. 37.

The subject-matter of this legislation is State wide, and we can read nothing in either act from which it will be presumed there are any special, distinct, or particular conditions of local import in the county of Wayne which imply that the legislature necessarily intended to exclude it from the general law prescribing fees for clerks in courts of like jurisdiction throughout the State.

The circuit courts of Michigan are State courts, all of the same general jurisdiction, of like functions, with uniform rules of practice and procedure throughout the State. We think said Act No. 267 clearly manifests an intent, on the part of the legislature, to cover the whole subject and prescribe a uniform system of fees of clerks in such courts. In the case of *Graham* v. *Muskegon County Clerk*, 116 Mich. 571 (74 N. W. 729), it was said by Justice MONTGOMERY:

"That a later act which covers the whole subject repeals the prior acts repugnant thereto is established doctrine."

This act is made to apply where clerks receive a salary, and where they do not. In broad language it covers "any final decree" in "any suit at law or in chancery" in "any circuit court." "Any" means "every," "each one of all," and, by its general significance, in this connection includes the circuit court for the county of Wayne. There is absolute repugnance between the two statutes in fixing the amount of the fee in question. In that particular the local act of 1883 has

been repealed by the general act of 1911, providing a uniform system of clerk's fees in the circuit courts throughout the State.

As stated by counsel for defendant in extenuation of his attitude relative to this item of taxed costs, while it is a small matter between litigants in any one case, it is a question of general interest to litigants and the legal profession, which it is proper to have finally adjudicated. The decree of the trial court is affirmed, and the taxation of costs will be modified by a reduction of the decree from $4 to $2.

Inasmuch as complainant has prevailed in the main case and defendant has prevailed upon the question of costs, which involved additional work and expense in printing of briefs and records, complainant will be awarded but one-half of the regular taxable costs.

MOORE, C. J., and McALVAY, BROOKE, OSTRANDER, and BIRD, JJ., concurred.