WOOD v. BUTTON.

1. FORECLOSURE—REDEMPTION—STATUTES.

The right to redeem from a foreclosure at law is a legal right created by the statute, and can neither be enlarged nor abridged by the courts.

2. SAME.

Under 3 Comp. Laws 1915, § 14959, a redemption is complete when one having the right to redeem pays in proper time to a proper person the sum which was bid with interest from the time of the sale at the rate per cent. borne by the mortgage, and, in case such payment is made to the register of deeds, the sum of one dollar as a fee.

3. SAME—LIEN FOR TAXES PAID.

Where said amount was paid by the owner to the register of deeds within the proper time, the redemption was complete, and the purchaser at foreclosure sale, who was a stranger to the title, was not thereafter entitled to maintain a bill to create a lien upon said premises to reimburse him for the amount paid after his purchase upon back taxes which were a lien thereon at the time of the foreclosure.[1]

Moore and Kuhn, JJ., dissenting.

Appeal from Van Buren; Des Voignes, J. Submitted January 30, 1919. (Docket No. 30.) Decided May 29, 1919.

Bill by Alfred Wood against Earl Porter Button and others to set aside a redemption from a mortgage foreclosure, and to enforce a lien for taxes. From a decree for plaintiff, defendants appeal. Reversed, and bill dismissed.

*Thomas J. Cavanaugh,* for plaintiff.

*Earl L. Burhans* and *David Anderson,* for defendants.

---

[1]See note in 10 L. R. A. (N. S.) 679.

MOORE, J. (*dissenting*). January 8, 1908, James P. Button and his wife made a mortgage to the West Michigan Savings Bank in the sum of $2,100 on land located in the township of Bangor, Michigan. In the year 1913, Mr. Button died, leaving a last will and testament by the terms of which he devised to E. Porter Button said land. In 1914 E. Porter Button took possession of the land and was occupying it at the time of the hearing of this case. He did not pay the interest on the mortgage nor the taxes for the years 1913, 1914, 1915, and 1916. The taxes for the years 1913, 1914, and 1915 were returned to the county treasurer for collection. In 1916 the West Michigan Savings Bank foreclosed the mortgage by advertisement and it was sold by the under-sheriff on the 11th day of December, 1916. At the sale the land was first bid off by a Mr. Charles for $6,200, but before the sale was closed, he, learning that the buyer would have to assume the taxes, withdrew his bid. The sheriff again offered the land for sale and stated that whoever bought the place had to pay the taxes. The plaintiff bid $5,900 and the property was struck off to him.

December 13, 1916, the plaintiff paid the sheriff $5,900 and received from him the following receipt:

"Sheriff's Office, Van Buren County, Paw Paw, Mich.
                              "December 13, 1916.
   "Received of Alfred Wood fifty-nine hundred dollars in payment of the James P. Button farm which was sold Monday, December 11th, 1916. The said Alfred Wood is to pay all back taxes.
                    "GLADSTONE R. BEATTIE, Sheriff."

On January 4, 1917, the plaintiff paid the taxes for the year 1916, $66.45. February 27, 1917, he paid taxes which had been returned to the county treasurer in the sum of $211.41. On December 14, 1917, E. Porter Button paid to the register of deeds $6,258, which was $5,900 with interest added, and caused the

following to be written on the margin of the sheriff's deed:

"Redeemed December 14th, 1917, at 3:50 p. m., by E. Porter Button, owner under will of J. P. Button, deceased. Amount paid $6,258.
"Dated December 14, 1917.
        "H. W. SHOWERMAN, Register of Deeds."

In the spring of 1915, E. Porter Button deeded the land by quitclaim to the West Michigan Savings Bank, and on December 14, 1917, the West Michigan Savings Bank deeded the land back to E. Porter Button. This latter deed was recorded January 29, 1918. On the same day that E. Porter Button received this quitclaim from the West Michigan Savings Bank he deeded a portion of the land to Fred Overton.

After December 11, 1917, and before the 14th of December, the register of deeds forwarded the sheriff's deed to the plaintiff and later he was requested to return it. He came to Paw Paw on January 10th, and there had a talk with the defendant Button's attorney. The lawyer in behalf of Mr. Button refused to pay the taxes or any part thereof. As a consequence of such refusal the plaintiff filed a bill in the circuit court setting out all the facts which we have narrated, and praying among other things that the memorandum written on the sheriff's deed indicating a redemption be stricken from the records of the register of deeds; that the said E. Porter Button, if it was found he had a right to redeem, be required by the court to pay the amount bid by the plaintiff for the land, the interest thereon and the taxes advanced by the plaintiff to protect his lien and in the meantime that the fund in possession of the register of deeds be impounded. There was also a general prayer for relief. A hearing was had and a decree was entered in substance requiring the defendant to pay the amount of taxes advanced and declaring that the same

remained a lien on the land described in the mortgage. From this decree the defendants appeal. We quote from the brief of counsel for appellants:

"The record presents two questions:

"1. Is the owner of a title under any obligation to pay more than the bid and interest to perfect a redemption?

"2. Can the purchaser on mortgage foreclosure who has paid taxes in addition to his bid recover those taxes by a separate, independent suit against the person who has redeemed or against the land?

"We do not consider that the receipt given by the sheriff, which stated that the purchaser must pay the taxes, added anything of duty or right to any of the parties interested in this transaction. The evidence shows that Mr. Button was not present at the mortgage sale. * * *

"But suppose he did know it. The sheriff has no authority of law to add conditions not imposed by statute. He might just as well have embodied in his receipt that the purchaser must keep up insurance on the buildings or put a new roof on the barn. That statement of the receipt added nothing to Wood's duties nor to his rights."

Counsel insist that when Mr. Button paid to the register of deeds $5,900 and interest thereon he paid all the law required him to pay in order to redeem, citing 5 How. Stat. (2d Ed.) § 13938 (3 Comp. Laws 1915, § 14959); *Walton* v. *Hollywood,* 47 Mich. 389; *Vincent* v. *Moore,* 51 Mich. 618; *Wyatt* v. *Quinby,* 65 Minn. 537 (68 N. W. 109); *Nopson* v. *Horton,* 20 Minn. 268, and other authorities which can be found in the brief of counsel. The attorney for the plaintiff insists those authorities are not conclusive.

Section 1821, 1 How. Stat. (2d Ed.) [1 Comp. Laws 1915, § 4049], reads in part:

* * * "Any person having a lien on property may, after thirty days from the time the tax is payable, pay the taxes thereon and the same may be added

to his lien and recovered with the rate of interest borne by the lien."

Reference was made to this provision by Chief Justice GRANT in *G. F. Sanborn Co.* v. *Alston,* 153 Mich. at p. 463. We quote:

"The owners of the land in dispute not only paid no taxes, but after the notice was served upon them under the statute notifying them that a sale of the lands had been lawfully made, and that Alston had title thereto, and that they were entitled to a reconveyance upon payment of the sums specified in the notice, still paid no attention to the payment of their taxes or exhibited any desire to protect their interests. They made no attempt to pay either the defendant Alston in accordance with the notice, or the subsequent taxes. They were paid by Alston. It was necessary that they should be paid to protect his title the validity of which is not questioned. By a technical defect in the notice the complainant (the grantee of the original owners) is still entitled to a reconveyance from the defendant. Is it equitable that complainant should be relieved from the payment of these subsequent taxes? Clearly not. Can a court of equity compel complainant to do equity by reimbursing the defendant Alston for these subsequent taxes? It seeks equity and ought to do equity. The law (section 3876, 1 Comp. Laws) provides:

"'Any person having a lien on property may, after thirty days from the time the tax is payable, pay the taxes thereon, and the same may be added to his lien, and recovered with the rate of interest borne by the lien.'

"The name given to the title acquired by the tax purchaser under the provisions of the law is immaterial. Whether we call the title absolute or conditional, he has a title which it is his right to protect by payment of subsequent taxes, and when the original owner demands a reconveyance from him, he ought in justice and equity to be compelled to pay those taxes which the purchaser has been compelled to pay, or otherwise lose his title or lien. A mortgagee is entitled to pay taxes and to have an additional lien upon the land therefor, although the mortgage is silent

as to the payment of taxes. *Sidenburg* v. *Ely*, 90 N. Y. 262 (43 Am. Rep. 163) ; 2 Jones on Mortgages (6th Ed.), § 1080; 3 Pomeroy on Equity Jurisprudence (3d Ed.), § 1217.

"It is also held that where a party pays the taxes in good faith, claiming title but having none, he is entitled to a reimbursement out of the land. *Kemp* v. *Cossart*, 47 Ark. 62 (14 S. W. 465) ; *Goodnow* v. *Moulton*, 51 Iowa, 555 (2 N. W. 395). The payment of the subsequent taxes, amounting to $573.37, inured to the benefit of the original owners. The complainant (representing the original grantors), not the defendant Alston, is demanding 'the pound of flesh.' Equity will not give it. Defendant Alston is entitled to be reimbursed for these taxes, with interest from the dates of payment."

In *Hopkins* v. *Sanders*, 172 Mich. 227, the right of a mortgagee to pay taxes to protect his lien was discussed. Justice STEERE in speaking for the court said in part:

"It is stated by text-writers supported by numerous authorities, to be a general rule of law that if the owner of mortgaged premises fails to pay taxes or assessments imposed thereon, and which it is his duty to pay, the mortgagee may pay such taxes to protect his lien and add the same to the amount of the mortgage, although the mortgage contains no clause expressly authorizing him to do so (2 Jones on Mortgages (6th Ed.), § 1134; Wiltsie on Mortgage Foreclosure, § 452 [1185]) ; but it is the contention of defendants that in this State, in the absence of statute or an express agreement between the parties, a mortgagee cannot pay taxes to relieve the mortgaged property of a tax lien which occurred prior to the execution of the instrument, and add it to the amount of his mortgage,—citing *Pond* v. *Drake*, 50 Mich. 302 (15 N. W. 466), and *Macomb* v. *Prentis*, 78 Mich. 255 (44 N. W. 324).

"Section 3876, 1 Comp. Laws (1 How. Stat. [2d Ed.] § 1821), provides:

"'Any person having a lien on property may after 30 days from the time the tax is payable, pay the taxes thereon, and the

same may be added to his lien and recovered with the rate of interest borne by the lien.'

"Section 220 of the charter of the city of Detroit provides:

" 'Any person having a lien on property may pay the taxes thereon, and the same may be added to his lien and recovered with the rate of interest borne by the lien.'

"Under the foregoing statutory provisions, the right to add the item of $39.10 for the city taxes of 1909, accruing subsequent to the date of the mortgage, to the amount of the mortgage cannot be questioned. * *· *

"It has been generally held that the payment of taxes and assessments by a mortgagee on property covered by his mortgage, to protect his lien and incidentally protect the title of the mortgagor, grows out of a transaction between the parties, which, from its nature, creates an equitable lien. The authorities cited do not foreclose that question in this State.

"In *Vaughn* v. *Nims*, 36 Mich. 298, Justice CAMPBELL states, as a general proposition:

" 'And there can be no doubt of the propriety of allowing a party to protect his mortgage interest against taxes.'

* * * "An equitable lien may exist, independent of any express agreement, arising out of general considerations of right and justice, honest dealing, and duty as applied to the subject-matter, the relations of the parties, and the transaction as a whole. We think it was within the power of the court to declare the taxes paid by complainant (on property, in which both were interested, and for the protection of both) an equitable lien, to be added to the amount of the mortgage, and to include the same in the decree for foreclosure."

In that case the mortgagee was allowed to recover for the taxes which he had paid to protect his lien. The case of *Sucker* v. *Cranmer*, 127 Minn. 124 (149 N. W. 16), is much like the instant case. It is interesting, too, because it cites *Nopson* v. *Horton*, *supra*, *Walton* v. *Hollywood*, *supra*, *Vincent* v. *Moore*, *supra*, and other authorities cited by the appellants in this case. We quote from the opinion:

"The defendants confidently contend that plaintiff has no personal claim against them for the taxes paid and has no redress whatever, since he failed to obtain it under the provisions of said section 8172. The decisions cited by them do not foreclose the question. In *Spencer* v. *Levering*, 8 Minn. 461, where the statement is made that there is no personal liability against the mortgagor for failure to pay taxes, it does not appear that any agreement existed in regard thereto. Nor did *Martin* v. *Lennon*, 19 Minn. 67 (65 Am. St. Rep. 576), or *Nopson* v. *Horton*, 20 Minn. 268, involve any agreement between the litigants in regard to the taxes. Cases from other jurisdictions do not reach the point because of dissimilarity of mortgage stipulations, of statutes and of facts. Those tending to sustain defendants' position that no express or implied agreement can be spelled out which authorizes a recovery against them are: *Johnson* v. *Payne*, 11 Neb. 269 (9 N. W. 81); *Kersenbrock* v. *Muff*, 29 Neb. 530 (45 N. W. 778); *Walton* v. *Hollywood*, 47 Mich. 385 (11 N. W. 209); *Vincent* v. *Moore*, 51 Mich. 618 (17 N. W. 81); *Swan* v. *Emerson*, 129 Mass. 289; *Semans* v. *Harvey*, 52 Ind. 331; *Horrigan* v. *Wellmuth*, 77 Mo. 542; *Stone* v. *Tilley*, 100 Tex. 487 (101 S. W. 201, 10 L. R. A. [N. S.] 678, 123 Am. St. Rep. 819, 15 Ann. Cas. 524). However, in *Hogg* v. *Longstreth*, 97 Pa. 255, the supreme court of Pennsylvania held that a mortgagee may pay the taxes and sue the mortgagor, whose duty it was to pay them, in assumpsit. In the case at bar it must be observed that defendants stipulated that in case of default in payment of taxes plaintiff, the assignee of the mortgagee, might pay them and charge the amount to the defendants; that the payment was not made until after the foreclosure; that the statute (section 8172) permitted plaintiff to make the payment when it was made and gave a lien on the land therefor; and that the foreclosure never became complete so that the purchaser could be said to have taken the title as it stood at the time of the sale, charged with these taxes. The defendants at all times remained the owners of the mortgaged premises. It has been held that a mortgagee who has paid taxes to protect his interests prior to the foreclosure sale may reimburse himself from the proceeds of the sale, although no mention was made in the foreclosure

notice, or the proceedings were so irregular that no claim could be made that the lien given by the statute, or by the usual terms of the mortgage, was enforced in the foreclosure proceeding. *Gorham* v. *Insurance Co.*, 62 Minn. 327 (64 N. W. 906); *Hamel* v. *Corbin,* 69 Minn. 223 (72 N. W. 106). Taxes paid by plaintiff during the year of redemption should, as to these defendants, stand in as good position since the enactment of section 8172, as did the taxes paid by the holder of the mortgage in the two cases last referred to.

"It would seem therefore to follow that at least plaintiff was not a volunteer or intermeddler when he redeemed from the tax certificates held by Hicks & Co. and when he, during the year of redemption, paid the subsequent taxes in order to avoid the imposition of the penalty. The statute gave him the right to make the payment and have a lien therefor. His mortgage executed by defendants permitted him to make the payment and charge the amount to them as owners of the land, and it further authorized him to purchase and hold tax titles upon the land in his own right. Under this situation it would be a gross injustice to permit defendants to profit several hundred dollars from plaintiff's mistake or inadvertence. Regardless of the right to a personal judgment we think plaintiff is entitled to be subrogated to the position of Hicks & Co. and the State as to these taxes. Taxes are a perpetual lien until paid. Hicks & Co. as holders of the tax certificates held this lien, by virtue of which they had also the right to pay subsequent taxes and acquire a lien therefor. Section 2125 G. S. 1913. We perceive no good reason why defendants should be heard to object to such subrogation. There is ample authority for the proposition that one who has paid taxes to protect his own rights and not as a volunteer or intermeddler, may be subrogated to the rights of the State or of the one who had acquired the State's rights. *Pratt* v. *Pratt*, 96 Ill. 184; *Sharp* v. *Thompson*, 100 Ill. 447 (39 Am. Rep. 61); *Cockrum* v. *West*, 122 Ind. 372 (23 N. E. 140); *John* v. *Connell*, 61 Neb. 267 (85 N. W. 82); *Fiacre* v. *Chapman*, 32 N. J. Eq. 463; *Title Guarantee & Trust Co.* v. *Haven,* 196 N. Y. 487 (89 N. E. 1082, 1085, 25 L. R. A. [N.

S.] 1308, 17 Ann. Cas. 1131). In this State in two cases where subrogation was permitted, there was included in the lien allowed, amounts paid for taxes. *Emmert* v. *Thompson*, 49 Minn. 386 (52 N. W. 31, 32 Am. St. Rep. 566), and *Elliott* v. *Tainter*, 88 Minn. 377 (93 N. W. 124).

"In our opinion the facts pleaded show that plaintiff, in reference to the payment of taxes and redeeming from the tax certificates of Hicks & Company, did so lawfully, under both contract and statute, to protect his interest in the land; and justice requires that he be substituted to the liens held by Hicks & Co., and the State, notwithstanding these have been canceled.

" 'This doctrine (of subrogation) is applied when such lien has been discharged under a mistake of the real situation, to save the party * * * from loss if such payment and discharge would otherwise give the owner of the land an unconscionable and inequitable advantage over the person who paid the same.' *Elliott* v. *Tainter, supra.*"

It would be a great injustice if in the instant case the defendant could take over the land without paying the taxes which it was the duty of the owner to pay.

The decree should be affirmed, with costs.

Kuhn, J., concurred with Moore, J.

Ostrander, J. The mortgage was foreclosed by advertisement and the premises were bid in, not by the mortgagee, but by a third person, a stranger to the title. The bid was considerably in excess of the mortgage debt. Afterwards, during the period of redemption, the purchaser paid taxes theretofore and thereafter levied upon the mortgaged premises. The owner of the land—by inheritance—in proper time paid the amount bid and interest to redeem from the sale, and the record in the office of the register of deeds was made to show the fact. Later, he sold a part of the land, giving a warranty deed therefor, to defendant Overton. The purchaser at the foreclosure sale filed

the bill in this cause, setting up these and other facts —which other facts do not affect or change the issue presented—asking, among other things, that it may be decreed—

"that the plaintiff is the holder of the said lands and the title thereto or a lien thereon in trust and that the said E. Porter Button be required to pay the amount of principal paid by this plaintiff to the sheriff of Van Buren county on the 11th day of December, 1916, the interest thereon to the date of the decree, the taxes advanced and paid by this plaintiff to free the lands from the liens created thereby and interest thereon as well as all costs and charges which this plaintiff is put to in this suit and that the same be paid at a short day to be fixed by the court in such decree and that in default thereof, that he be forever barred from asserting any claim to said lands or any portion thereof.

"(5) That the fund now in the hands of the register of deeds be impounded by this court to be used to reimburse the said Fred J. Overton, if in equity and justice it shall be found that he paid over any money to the said E. Porter Button for the land so deeded to him to aid the said E. Porter Button in attempting to redeem said land, and to be used for such other purpose to protect the rights and interests of innocent parties involved in this litigation and agreeable to the facts and circumstances as they develop on the hearing of said cause."

The decree entered reads, in part, as follows:

"That the said Alfred Wood be and he is hereby granted a lien, and a lien is hereby created on the land above described for said sums, together with the interest thereon and the costs of this proceeding and that in default of the payment thereof the said premises above described or so much thereof as may be sufficient to raise the amount so as aforesaid decreed to be due the said plaintiff with interest thereon as aforesaid and the costs in this case, and the costs and expenses of sale, may be sold at public auction."

The sums so referred to are $66.45 and $211.41,

and interest thereon from February 27, 1917, to the date of payment. It is further decreed:

"That after the payment aforesaid the redemption of said land by the said E. Porter Button, be in all things confirmed the same as though the said E. Porter Button had paid to the register of deeds the taxes aforesaid, with interest thereon up to the time of said redemption."

The bill was not demurred to, but was answered, affirmative relief for defendants being asked for.

In my opinion, the case presented is not one to be determined upon some notion of general equities. The parties have a right to stand upon the law. *Carlisle* v. *Dunlap*, 203 Mich. 602. The right to redeem from a foreclosure at law is a legal right, is created by the statute, and can neither be enlarged nor abridged by courts. A redemption is complete when one having the right to redeem pays in proper time, to a proper person,—

"the sum which was bid   *  *  *   with interest from the time of the sale at the rate per cent. borne by the mortgage,  *  *  * and in case such payment is made to the register of deeds, the sum of one dollar as a fee."  *  *  *  3 Comp. Laws 1915, § 14959.

Such a redemption was made in this case. The power of sale contained in the mortgage is exhausted, the mortgage debt is paid, the mortgage lien discharged, the sheriff's deed canceled, and the mortgagee and the bidder at the sale have no further interest in the property. In what right, then, and by what authority may a court declare a lien upon the land for taxes paid by the bidder after he purchased the land and before redemption? It seems to be considered that upon the authority of decided cases the question may be somehow answered favorably to plaintiff. Various cases are referred to and voluminously quoted from without pointing out the principle relied upon

to sustain the decree, unless it is pointed out in the last paragraph, where it is said,—

"It would be a great injustice if in the instant case the defendant could take over the land without paying the taxes which it was the duty of the owner to pay."

No regard is paid to the rights of defendant Overton, who purchased a part of the land after the redemption was made.

In my opinion, no case is cited which sustains the decree. No question is presented of the right of a mortgagee, by agreement with the mortgagor, or by virtue of a statute, to add to the sum due on the mortgage before foreclosure the taxes he has been obliged to pay. Decisions affirming that right are not in point here. This is not a case like *G. F. Sanborn Co.* v. *Alston*, 153 Mich. 456, in which a plaintiff seeking equitable relief is granted it upon condition that he do equity. It is not a case like *Hopkins* v. *Sanders*, 172 Mich. 227, in which the taxes paid are sought to be added to the amount of the decree in a chancery foreclosure. In *Sucker* v. *Cranmer*, 127 Minn. 124 (149 N. W. 16), the question presented is stated in the opinion to be:

"Has a mortgagee, who at the foreclosure sale bid in the property for the full amount of the debt then due, but while the year of redemption ran, disbursed money in payment of taxes and in redemption from tax sales, no remedy if he has failed to file and furnish an affidavit in accordance with section 8172, G. S. 1913, when redemption is made by the mortgagor, as owner, without reimbursement for such tax payments, the mortgage containing a provision that the mortgagee may pay delinquent taxes and charge the amount to the mortgagor or the then owner, or at his option secure tax title to the property?"

No right of the mortgagee is involved in the case at bar and the owner, who redeemed it, is not the mort-

gagor. And in *Wyatt* v. *Quinby,* 65 Minn. 537 (68 N. W. 109), the question,—

"Can a mortgagee after a foreclosure of his mortgage by advertisement, and a sale of the mortgaged premises, pay taxes due thereon at the date of the sale, and reimburse himself for the amount so paid, from the proceeds of the sale of the premises?"

—was answered in the negative. In *Gorham* v. *Insurance Co.,* 62 Minn. 327 (64 N. W. 906), the Minnesota court held, with reference to the Minnesota statute,—

"The statute and the mortgage secure to the mortgagee the right to pay the taxes at any time before the mortgage debt is extinguished, and when he does so pay the amount thereof is a part of the mortgage debt,—an additional lien on the premises,—'collectible with, as a part of and in the same manner as the amount secured by the original lien.' "

We need not seek light from other jurisdictions. In *Vincent* v. *Moore,* 51 Mich. 618, the bill was filed to enforce payment of a sum of money paid by complainants to redeem lands of defendant from a tax sale, upon which land, at the time of the redemption the complainants had a mortgage. The land was sold in foreclosure proceedings, bid in for the amount of the mortgage debt, and defendant redeemed from the sale. In part, this court said:

"What complainants were compelled to pay for the protection of their mortgage did not constitute a separate and independent lien on the land; it could become a lien only in connection with and because of the mortgage, and could not exist independent of it. When therefore complainants took proceedings which resulted in a satisfaction of the mortgage, any lien which may have existed before for the taxes paid was necessarily discharged, whether the amount paid was claimed in those proceedings or not. All that complainants could claim by virtue of the mortgage they were bound to claim in those proceedings, and they

could not at pleasure split up their demand and make the parts the subjects of separate suits."

In *Walton* v. *Hollywood*, 47 Mich. 385, what is determined is fairly stated in the syllabus. The reasoning employed is convincing and not to be easily answered. The head notes are:

"If, before foreclosure, a mortgagee pays taxes and insurance which the mortgager ought to have paid the sum paid may be included in the amount for which he forecloses, even though the insurance was taken for the full period allowed for redemption.

"Where a purchaser on foreclosure, by way of keeping good his lien during the period of redemption, pays taxes and insurance which, under the mortgage, the mortgager himself was bound to pay, he cannot, when farther instalments fall due, again resort to the power of sale for the purpose of securing re-payment. The power is exhausted by the original foreclosure, and redemption may be had on paying the amount bid at the sale, with interest."

These and other cases to a like effect I regard as sustaining the conclusion that the decree appealed from is wrong and should be reversed and one entered here dismissing the bill, with costs to appellants.

BIRD, C. J., and STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred with OSTRANDER, J.