CARLISLE *v.* DUNLAP.

1. FORECLOSURE—MORTGAGES — INADEQUACY OF PRICE — STATUTORY FORECLOSURE.

   Inadequacy of price bid for mortgaged property at the statutory foreclosure sale will not vitiate such sale if otherwise fair and regular, since the legislative act has determined the conditions on which rights shall vest or be forfeited, and the court cannot interpose conditions or qualifications in violation of the statute.

2. SAME.

   On appeal from the decree of the court below dismissing plaintiff's bill to set aside a mortgage foreclosure, in the absence of evidence of fraud, mistake, unfairness, or irregularity, the decree will be affirmed.

Appeal from Wayne; Collingwood, J., presiding. Submitted October 16, 1918. (Docket No. 62.) Decided December 27, 1918.

Bill by Jessie Carlisle against Mary E. Dunlap and others to set aside a mortgage foreclosure. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Thomas W. Payne* (*George W. Coomer,* of counsel), for plaintiff.

*William E. Baubie,* for defendants.

OSTRANDER, C. J.   The plaintiff borrowed $172.50 and to secure its payment executed a second mortgage upon certain real estate in Detroit to Mary E. Dunlap, as well as a promissory note, bearing interest at 4 per cent. per annum, payable monthly, due nine months after date.   This was on May 26, 1914.   She paid various sums, amounting in the aggregate to $75 —September 1, 1914, $60; April 16, 1915, $10; May 7, 1915, $5.   The property mortgaged is familiarly known as No. 479, Military avenue, and was leased by the plaintiff to a tenant or tenants at a monthly rental.   The first mortgage upon the property was for the sum of $1,700 and was held by the Wayne County and Home Savings Bank of Detroit.

In paragraphs 5, 6 and 7 of the bill it is charged, and is admitted in the answers—

"that on, to wit: the eighteenth day of September, 1915, said Mary E. Dunlap caused a notice to be published in the 'Detroit Courier' that default had been made in the payment of said mortgage by your oratrix, and there was due and owing on account thereof the sum of $105.41 and that pursuant to the power of sale contained in said mortgage, the said premises were to be sold to the highest bidder on the twenty-third day of December, 1915, at the southerly or Congress street entrance of the Wayne county building in said city of Detroit, pursuant to the statute in such case made and provided.

"6. That pursuant to said notice the sheriff of said county did offer said premises for sale at said time and place, and did sell the same to Donald D. Williams for the sum of $147.96; and did execute the usual sheriff's deed therefor.

"7. That afterwards on, to wit: the fifth day of January, 1916, said sheriff's deed, together with the evidence of sale, was recorded in the office of the register

of deeds for said Wayne county, pursuant to the statute in such case made and provided, in liber 1032 of deeds, on page 136, to which for greater certainty your oratrix begs leave to refer."

It is further charged (paragraph 9 of the bill) that the sheriff's deed and said foreclosure proceedings are wholly void, but no reason for this charge is given unless we infer that the reason is given in the preceding paragraph of the bill, in which it is charged that Mary E. Dunlap was not the owner of the mortgage on September 18, 1915, but had theretofore assigned it to another, who had in turn assigned an interest to still another person.

It is charged that plaintiff has tendered and offered to pay the full amount of the debt, which offer was refused. It is prayed that a decree be made that the said foreclosure proceedings are void, that plaintiff be permitted to deposit with the court the amount due and owing on account of the note and mortgage, and that the mortgage be discharged. The bill was filed February 8, 1917, and is verified. The cause came on to be heard June 27, 1917.

The testimony being concluded, the learned trial judge said:

"The equities are all with Mrs. Carlisle. If there is any way in which I can give her a deed to this property I am going to do it, and if I cannot do it, I shall have to sustain the sale."

On October 24, 1917, a decree was entered dismissing the bill. Dated December 1, 1917, filed December 6, 1917, an order was made staying proceedings pending an appeal. Dated the same day and filed December 3, 1917, plaintiff claimed an appeal, notice of which was given to solicitors for the defendants, if it was given at all (there is no evidence of its service in the record), May 2, 1918, or at about that time, with notice, also, of the filing of a bond on May 2, 1918.

Later, on application to the Supreme Court, time for taking an appeal was extended to July 1, 1918. The case was settled and signed June 8, 1918.

In this court, plaintiff rests her right to a decree permitting her to redeem the premises upon grounds stated in the brief as follows:

"*First.* The inadequacy of the consideration for which the mortgaged premises were sold.

"*Second.* The method pursued in conducting the foreclosure proceedings, and in not notifying plaintiff that proceedings to foreclose the mortgage were pending, so as to afford her an opportunity to pay and discharge the mortgage.

"*Third.* The power of a court of equity to grant relief against forfeitures.

"*Fourth.* The right of redemption from foreclosures in general, and the time in which proceedings therefor may be instituted."

This presents a single ground, which is the inadequacy of the sum bid for the property at the foreclosure sale, and this ground is not asserted in the bill of complaint. At the hearing, the testimony for plaintiff being concluded, counsel for plaintiff was asked by the court: "On what ground, Mr. Payne, are you seeking to have this set aside?" and he replied, "On the ground that Mrs. Carlisle had not received notice." Assuming that the bill may be ordered to be amended in this court so as to assert the ground for relief now relied upon, and any other ground which the testimony has disclosed, we are, in examining the first proposition, confronted with the rule that inadequacy of price cannot vitiate such a sale, if otherwise fair and regular. The reason for the rule is stated clearly by Mr. Justice CAMPBELL in *Cameron* v. *Adams*, 31 Mich. 426, 428. He said:

"If the sale had been made under the decree of a court, the authorities cited on the argument would bear very strongly in favor of relieving complainant.

Courts of equity have large powers for relief against the consequences of inevitable accident in private dealings, and may doubtless control their own process and decrees to that end. But we think there is no such power to relieve against statutory forfeitures. Where a valid legislative act has determined the conditions on which rights shall vest or be forfeited, and there has been no fraud in conducting the legal measures, no court can interpose conditions or qualifications in violation of the statute. The parties have a right to stand upon the terms of the law. This principle has not been open to controversy, and is familiar and elementary."

It is not now contended that this sale was not fair and regular. If we were to go farther and to examine the facts disclosed, it would appear that plaintiff had a home and address at 479 Military avenue, and that it was the address she gave to the agent of the mortgagee when she borrowed the money. It would further appear that as early as March 17, 1915, a letter addressed as above was written and sent to plaintiff, informing her that the mortgagee had placed the note given with the mortgage in the hands of attorneys for collection with instructions to foreclose the mortgage immediately and that the matter would be held until Monday, March 22, 1915. On April 1, 1915, plaintiff by letter excused herself for not calling upon the attorneys; on April 10, 1915, they wrote to her to the effect that they would hold the matter until the 15th instant, when, not having heard from her, they should institute proceedings. Plaintiff then paid $10 on the debt—she left the money at the office of the attorneys, who acknowledged receipt of it in writing and said they should expect at least $10 on the 1st and 15th of each month until the debt was paid. Under date May 12, 1915, plaintiff wrote that she had been very sick.

"I don't know what to say about the payment I promised to pay. I do wish you could stand that lady

off for a while until I get the necessaries straightened up. I'm not going to be so poor all the time and I'll make it all right with you. Fix it up some way & just so soon as get around to it, I'll call to your office. Trusting everything will prove out all right, I remain."

Receipt of this letter was acknowledged and it was said in the letter that a payment of $15 on or before June 1, 1915, was expected, and, if not made, foreclosure would be begun on that date. Following this, letters were written and sent to her August 3, September 1, December 30, 1915. In the letter last mentioned, she was notified that on December 23, 1915, the premises were sold by the sheriff under the power of sale in the mortgage, notice of the sale having been published in the Detroit Courier; that the premises were sold for $147.90; that she might redeem by paying that amount to the register of deeds, otherwise, etc., etc. On January 8, 1917, plaintiff having done nothing in the premises, a letter was addressed to her tenant, notifying him to vacate the premises. Again, on January 25, February 3, and February 20, 1917, letters were written to the said tenant, arrangement having been made with him to pay rent at $30 per month. In January, 1917, suit was instituted before a circuit court commissioner to obtain restitution of the premises. Plaintiff and her tenant were both summoned. Plaintiff has never made a tender of the amount due upon the mortgage or of the amount for which the premises were sold. She testified that she had never received some of the letters which are above referred to, and her tenant testified that they had not been delivered at 479 Military avenue. But the testimony on the part of defendants is that each letter was addressed as above stated, that the envelopes bore the return card of the office from which they were sent, that they were mailed in due course and were

not returned. We may say, therefore, there is no evidence of fraud, mistake, unfairness or irregularity. On the other hand, money has been expended upon the property by the purchaser at the sale, taxes and the interest on the first mortgage have been paid. Repeating the language of Mr. Justice CAMPBELL:

"Where a valid legislative act has determined the conditions on which rights shall vest or be forfeited, and there has been no fraud in conducting the legal measures, no court can interpose conditions or qualifications in violation of the statute. The parties have a right to stand upon the terms of the law. * * *

"The case is one of much hardship, and it is much to be regretted that the complainants have been deprived of their estate by the rigorous effect of provisions which take no account of misfortunes. But courts of equity cannot assume any censorship to condemn parties for doing what the courts cannot prevent. They can only redress wrongs within their jurisdiction."

The decree must be affirmed, with costs to appellees.

BIRD, MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.