SENTERS v OTTAWA SAVINGS BANK, FSB

Docket No. 94637. Argued May 5, 1993 (Calendar No. 14). Decided
July 14, 1993.

Ottawa Savings Bank, mortgagee of certain real property, ac-
quired the property at its own mortgage foreclosure sale and
subsequently redeemed the property from a construction lien
foreclosure sale. Michele Senters, successor in interest to the
parties who had created the construction lien, within the
mortgage foreclosure sale redemption period, tendered to Ot-
tawa an amount representing the sum bid by Ottawa at its
foreclosure sale, plus interest and taxes and insurance premi-
ums paid by Ottawa, but not any amounts it paid to redeem the
premises from the construction lien foreclosure sale.

After Ottawa refused to discharge the mortgage, Michele
Senters brought an action in the Kent Circuit Court against
Ottawa for discharge of the mortgage and slander of title,
arguing that under MCL 600.3240; MSA 27A.3240, she had
properly redeemed the property. The court, H. David Soet, J.,
granted summary disposition for the defendant. The Court of
Appeals, MacKenzie, P.J., and Weaver and R. B. Burns, JJ.,
affirmed, holding that Ottawa was entitled to an equitable lien
(Docket No. 133859). The plaintiff appeals.

In a unanimous opinion by Justice Riley, the Supreme Court
held:

The plaintiff complied with the clear language of MCL
600.3240; MSA 27A.3240 and therefore properly redeemed the
property following the mortgage foreclosure sale. The defen-
dant is not entitled to a lien on the property in the amount it
paid to redeem the property from the construction lien fore-
closure sale.

1. Foreclosure sales by advertisement are defined and regu-
lated by statute. Once a mortgagee elects to foreclose a mort-
gage by this method, MCL 600.3201 et seq.; MSA 27A.3201 et
seq. governs the prerequisites of the sale, notice of foreclosure
and publication, mechanisms of the sale, and redemption. Upon
a foreclosure sale, the mortgage debt is considered paid, and
the mortgage lien is discharged. If the mortgagee purchases the
property at the sale, it stands in the position of an ordinary
purchaser and obtains an ownership interest in the land,

subject to the mortgagor's opportunity of redemption. In order to redeem the property from the mortgage foreclosure sale by advertisement under the plain meaning of MCL 600.3240; MSA 27A.3240, a plaintiff must pay the bid price plus interest and any amount for taxes and insurance that the purchaser has properly filed with the register of deeds. Upon foreclosure by advertisement in the present case, the rights of the parties were controlled by statute. Before the redemption period expired, plaintiff tendered to defendant the amount required under MCL 600.3240; MSA 27A.3240. The plaintiff therefore has legal title to the property free of defendant's mortgage lien.

2. In the absence of a written contract, an equitable lien will be established only where, through the relations of the parties, there is a clear intent to use an identifiable piece of property as security for a debt. In the present case, MCL 600.3240; MSA 27A.3240 specifies the requirements for redemption, leaving no room for equitable considerations absent fraud, accident, or mistake. The plaintiff and the defendant were parties to a mortgage agreement that was extinguished by the mortgage foreclosure sale. The defendant did not enter an agreement with the plaintiff regarding the effect of the redemption from the construction lien foreclosure sale on the plaintiff's right of redemption from the defendant's mortgage foreclosure sale. No fraud, accident, or mistake is alleged. Had the defendant redeemed from the construction lien foreclosure sale before foreclosing on the mortgage, it could have added to the mortgage debt the amount paid to redeem, thereby recovering that amount at the mortgage foreclosure sale. Even after the foreclosure by advertisement was begun, it could have been adjourned pursuant to MCL 600.3220; MSA 27A.3220, to allow the redemption period from the construction lien foreclosure sale to pass before conducting the mortgage foreclosure sale. Pursuant to the mortgage contract the defendant could then have added to the mortgage debt and the mortgage foreclosure sale bid any amount it expended to redeem the property from the construction lien foreclosure sale. The choice by defendant regarding the timing and manner of the foreclosure sale exposed it to the risk that plaintiff would redeem from the mortgage foreclosure sale without being held responsible for payment of the redemption expenses. Because there is no fraud, accident, or mistake, the clear language of MCL 600.3240; MSA 27A.3240 must control and defendants are entitled only to the mortgage foreclosure sale bid plus interest and any taxes and insurance properly paid during the redemption period.

Reversed.

196 Mich App 168; 492 NW2d 466 (1992).

*Sherman H. Cone* for the plaintiff.

*Varnum, Riddering, Schmidt & Howlett* (by *Thomas A. Hoffman*) for the defendant.

RILEY, J. In the present case, plaintiff seeks the discharge of a mortgage as well as damages for slander of title. Defendant was the holder of the real estate mortgage that defendant foreclosed by advertisement. Defendant asserts a claim against the property in the amount it paid to redeem the property from a construction lien foreclosure sale. We find that plaintiff has complied with the clear language of the redemption statute and that defendant is not entitled to a lien on the property in the amount it paid to redeem the property from a prior foreclosure sale. The decision of the Court of Appeals is reversed.

I

This case was presented to the trial court on a stipulation of facts. In May 1984, a mortgage on the premises was executed between Paul and Yvonne Farmwald and Lambrecht & Company. This mortgage was subsequently assigned to defendant. In February 1988, Cross Pointe, Inc., the successors in interest to the Farmwald property, conveyed a less-than-fee interest to plaintiff pursuant to a land contract. Plaintiff paid $22,500 for the property, with $52,000 owing on the land contract.[1]

Judgments of foreclosure were entered pursuant

---

[1] Plaintiff acquired a fee interest in the property pursuant to a quit claim deed executed September 15, 1989. In consideration of $1 paid by plaintiff, plaintiff acquired a fee interest subject to the outstanding mortgage with the defendant.

to several construction lien lawsuits begun in 1984 and 1985. These construction liens were incurred by the Farmwalds. On June 8, 1989, the premises were sold at a construction lien foreclosure sale for $13,500 to Rand Development. The redemption period from the construction lien foreclosure sale was four months.

On August 24, 1989, the premises were sold at a foreclosure sale by advertisement of the mortgage held by defendant. Defendant was the highest bidder, paying $52,286.59. The redemption period from the mortgage foreclosure sale was six months.

On October 6, 1989, two days before the expiration of the redemption period from the construction lien foreclosure sale, defendant redeemed the premises, paying $14,037.05.[2] On December 5, 1989, defendant filed an affidavit of interest in real property indicating that redemption from the mortgage foreclosure sale would require payment of the bid price plus interest, as well as the amount paid to redeem the property from the construction lien foreclosure sale.

On February 23, 1990, a day before the expiration of the redemption period, plaintiff delivered to defendant two certified checks totaling $54,896.45. This amount represented the price bid by defendant at the foreclosure sale plus interest. Plaintiff maintained, and presently argues, that pursuant to MCL 600.3240; MSA 27A.3240,[3] in order to

[2] This amount includes the bid price plus interest.

[3] MCL 600.3240; MSA 27A.3240 provides in part:

(1) If the mortgagor . . . within the applicable time limit prescribed in this section, redeems the entire premises sold by paying to the purchaser . . . the sum which was bid for the entire premises sold, with interest from the time of the sale at the rate percent borne by the mortgage, . . . then the deed shall be void and of no effect. . . .

redeem the property from the mortgage fore-
closure sale, she is required to pay the sum bid at
the foreclosure sale plus interest and any taxes
and insurance premiums paid by the sale pur-
chaser. Plaintiff argues that she is not obligated to
pay the amount expended by defendant to redeem
the premises from the construction lien foreclosure
sale.

The trial court granted summary disposition in
favor of defendant. Finding that MCL 600.3240;
MSA 27A.3240 does not address whether the pay-
ment of prior existing liens merges into a mortga-
gee's claim, the court applied the "underlying
doctrine of redemption which has existed in the
law for many centuries." It concluded that the
doctrine of redemption required payment by plain-
tiff. In the alternative, the court held that defen-
dant was entitled to an equitable lien to recover
the amount paid to preserve the property.

Although rejecting the argument that defendant
is entitled to recover on the basis of redemption
from a mortgage sale by advertisement, the Court
of Appeals held that defendant was entitled to an
equitable lien.[4] By extinguishing the construction

(2) If the purchaser, following the sale, pays any sum or
sums as taxes assessed against the property or premiums upon
any insurance policy covering any buildings located on the
property which under the terms of the mortgage it would have
been the duty of the mortgagor to have paid had the mortgage
not been foreclosed, and which premiums are necessary to keep
the policy in force until the expiration of the period of redemp-
tion, and the purchaser . . . makes an affidavit of the payment
showing the amount and items paid, together with the receipt
evidencing the payment of the taxes or insurance
premiums . . . the register of deeds shall indorse on the docu-
ments filed the time they are received. . . . After a filing under
this subsection, redemption shall only be made upon payment
of the sum above specified plus the amount shown by the
affidavits and receipts to have been so paid, with interest on
that amount, from the date of the payment to the date of
redemption, at the rate specified in the mortgage.

4 196 Mich App 168; 492 NW2d 466 (1992).

liens, defendant preserved plaintiff's interest in the property and increased the value of the premises. Hence, the Court concluded that it would be inequitable not to require plaintiff to compensate defendant for the amount expended to redeem the property from the construction lien foreclosure sale. We granted leave to appeal.[5]

II

We agree with the decision of the Court of Appeals that plaintiff has complied with the statutory requirements and therefore has properly redeemed the property from defendant's foreclosure sale. Foreclosure sales by advertisement are defined and regulated by statute.[6] Once the mortgagee elects to foreclose a mortgage by this method, the statute governs the prerequisites of the sale, notice of foreclosure and publication, mechanisms of the sale, and redemption.[7] Upon a foreclosure sale, the mortgage debt is considered paid and the mortgage lien discharged. *Wood v Button,* 205 Mich 692, 701; 172 NW 422 (1919). If the mortgagee purchases the property at the sale, it stands in the position of an ordinary purchaser and obtains an ownership interest in the land, subject to the mortgagor's opportunity of redemption. *Doyle v Howard,* 16 Mich 261, 265 (1867). In order to redeem the property from the mortgage foreclosure sale by advertisement under the plain meaning of MCL 600.3240; MSA 27A.3240, plaintiff must pay the bid price plus interest, and any amount for taxes and insurance that the purchaser has properly filed with the register of deeds.

Several early decisions of this Court strictly

[5] 442 Mich 851 (1993).

[6] MCL 600.3201; MSA 27A.3201.

[7] See MCL 600.3201 *et seq.*; MSA 27A.3201 *et seq.*

construed the redemption statute,[8] precluding devi-
ation from its terms despite equitable considera-
tions. In *Cameron v Adams,* 31 Mich 426, 428
(1875), the Court declined to extend the redemp-
tion period despite the fact that defendant had
paid part of the redemption amount and a serious
illness had prevented him from conducting his
personal business during the redemption period.

> Where a valid legislative act has determined the
> conditions on which rights shall vest or be for-
> feited, and there has been no fraud in conducting
> the legal measures, no court can interpose condi-
> tions or qualifications in violation of the
> statute. . . . This principle has not been open to
> controversy, and is familiar and elementary.[9]

This Court has also refused to allow the addition
of attorney fees to the amount necessary to re-
deem from a foreclosure sale, although those attor-
ney fees were paid pursuant to the mortgage
agreement as part of the foreclosure sale bid.

> As the law now stands it cannot be regarded as
> authorizing as a condition precedent to redemption
> any other exaction in the way of fees or compensa-
> tion than such as the statute specifies, and stipula-
> tions in advance for gross allowances are not
> consistent with public policy. [*Vosburgh v Lay,* 45
> Mich 455, 457; 8 NW 91 (1881).]

The mortgagee-purchaser at a foreclosure sale by
advertisement in *Walton v Hollywood,* 47 Mich
385, 388; 11 NW 209 (1882), was not allowed to
revive the mortgage lien on the property as secu-

---

[8] Prior statutes required a redemptioner to pay the price bid at the
foreclosure sale plus interest without providing for payment of inter-
vening taxes or insurance premiums. See 1929 CL 14435; 1915 CL
14959; 1877 PA 129; 1871 CL 6922; 1863 PA 47.

[9] See also *Carlisle v Dunlap,* 203 Mich 602, 606; 169 NW 936 (1918);
*Heimerdinger v Heimerdinger,* 299 Mich 149; 299 NW 844 (1941).

rity for payment of sums expended by the mortgagee for taxes and insurance during the redemption period. Once the mortgagor paid the amount required by statute, redemption was considered accomplished despite these intervening payments by the foreclosure sale purchaser to preserve the property.[10] The Court reasoned that after the sale, the rights of the parties are fixed by statute rather than controlled by the mortgage.[11]

In *Wood, supra* at 703, the plaintiff was denied a lien in trust upon the land in the amount paid for taxes after the foreclosure sale by advertisement.

> [T]he case presented is not one to be determined upon some notion of general equities. The parties have a right to stand upon the law. . . . The right to redeem from a foreclosure at law is a legal right, is created by statute, and can neither be enlarged nor abridged by courts. A redemption is complete when one having the right to redeem pays in proper time, to a proper person,—
>
> "the sum which was bid . . . with interest . . . ."

Once redemption is completed pursuant to statute, "[t]he power of sale contained in the mortgage is exhausted, the mortgage debt is paid, the mortgage lien discharged, the sheriff's deed canceled, and the mortgagee and the bidder at the sale have no further interest in the property." *Id.*[12]

Upon foreclosure by advertisement in the present case, the rights of the parties were controlled

[10] The redemption statute did not provide for payment of intervening taxes and insurance. See n 8.

[11] See also *Mortgage & Contract Co v First Mortgage Bond Co,* 256 Mich 451; 240 NW 39 (1932).

[12] See also *New York Life Ins Co v Erb,* 276 Mich 610, 614; 268 NW 754 (1936), in which this Court held that equity will not revive the mortgage lien, nor "impress and enforce a lien" for taxes paid after the foreclosure sale by advertisement, where the statute did not provide for reimbursement for payment of intervening taxes. See n 8.

by statute. Before the redemption period expired, plaintiff tendered to defendant the amount required under MCL 600.3240; MSA 27A.3240 to redeem from a foreclosure sale by advertisement. The plaintiff therefore has legal title to the property free of defendant's mortgage lien. We now turn to the issue whether an equitable lien may be imposed in favor of defendant so that defendant might recover the amount it paid to redeem the property from the construction lien foreclosure sale.

III

In the absence of a written contract, an equitable lien will be established only where, through the relations of the parties, there is a clear intent to use an identifiable piece of property as security for a debt. See *Schrot v Garnett,* 370 Mich 161; 121 NW2d 722 (1963).[13] In *Kelly v Kelly,* 54 Mich 30; 19 NW 580 (1884), the son of a landowner sought to impose an equitable lien on his father's property in the amount paid by the son to satisfy certain debts on the land. The Court dismissed the complaint, finding insufficient evidence to support the son's assertion that he paid the creditors pursuant to an agreement with his father. In the absence of a written contract, "from the relations of the parties, equity will declare a lien out of considerations of right and justice, based upon those maxims which lie at the foundation of equity jurisprudence." *Id.* at 47. The Court in *Cheff v Haan,* 269 Mich 593, 598; 257 NW 894 (1934), denied the plaintiff's right to establish and foreclose an equitable lien on defendant's property, holding:

---

[13] See also *Drettman v Marchand,* 337 Mich 1; 59 NW2d 56 (1953) (an equitable lien was established to enforce an agreement that the defendant fraudulently attempted to avoid).

> Equity will create a lien only in those cases where the party entitled thereto has been prevented by fraud, accident or mistake from securing that to which he was equitably entitled.

Although several early decisions considered with equitable circumstances required a deviation from the literal requirements of the redemption statute, none is dispositive of the present case. In *Grossman Bldg Co v Elliott,* 382 Mich 596, 606; 171 NW2d 441 (1969), the Court refused to allow the plaintiff an extension to the three-month redemption period on the basis that no equitable considerations prevented the Court from literally following the plain intent and operation of the statute.

> Absent some unusual circumstances or additional considerations not within the ambit of the statute, this Court must follow the clear and plain meaning of the statute.
> We accept as a general rule that the right to redeem under present statutes is a legal right and can neither be enlarged nor abridged by the courts. [*Id.* at 603.]

Any deviation from the literal requirements of the statute "must be addressed to the conscience of the court." *Id.*

In *Wallace v McBride,* 70 Mich 596; 38 NW 592 (1888), the holder of a second mortgage by fraud, Wallace, was required to assign the mortgage to the true mortgagee, Storrs. The Court also held that Wallace was entitled to establish a lien on the property in the amount paid to redeem the property from a prior mortgage. The Court reasoned that the money paid was for the benefit of Storrs. By redeeming the property from the foreclosure sale, Wallace saved the property for the use and benefit of Storrs, and "in equity it was the duty of

Storrs to refund it to [Wallace]." *Id.* at 601. While
the analysis in *Wallace* is persuasive, no statute
controlled the circumstances in which a mortgagee
was required to assign his interest because it was
acquired fraudulently. In the present case, MCL
600.3240; MSA 27A.3240 specifies the require-
ments for redemption, leaving no room for equita-
ble considerations absent fraud, accident, or mis-
take.

In *G S Sanborn Co v Alston,* 153 Mich 456; 116
NW 1099 (1908), the Court held that the purchas-
ers at a tax sale were entitled to be reimbursed for
taxes paid between the sale and the reconveyance
to the owners. The owners knew the land was
subject to taxation and ignored their duty to pay.
The tax sale purchaser paid the amount due for
taxes in order to protect his title. Because of a
"technical defect in the notice," the owners were
entitled to a reconveyance. The Court concluded
that the owners "ought in justice and equity to be
compelled to pay those taxes which the purchaser
has been compelled to pay, or otherwise lose his
title or lien." *Id.* at 464. *Alston,* however, is distin-
guishable from the present case because it did not
involve redemption from a foreclosure sale by
advertisement and neither party satisfied the stat-
utory requirements. The original owners did not
satisfy the requirements for reconveyance from
the tax sale, and the tax sale purchasers did not
satisfy the statutory notice requirements. When
confronted with equities conflicting with clear stat-
utory language,[14] the *Alston* Court stated, *supra* at
461: "Courts of equity, however, as well as law,
must apply legislative enactments in accordance
with the plain intent and language used by the

---

[14] The tax sale purchasers claimed the original owners showed such
laches as to require equity to overcome strict statutory notice require-
ments.

legislature." Where, as in the present case, a statute is applicable to the circumstances and dictates the requirements for relief by one party, equity will not interfere.

Finally, in the present case, defendant chose to foreclose by advertisement, which is strictly regulated by the statute. Had defendant chosen to proceed pursuant to a foreclosure suit in equity, it might have raised its equitable defenses. In *Masella v Bisson,* 359 Mich 512, 525; 102 NW2d 468 (1960), this Court acknowledged that one who seeks the statutory remedy in preference to resort to the equitable proceeding is bound to comply with the statute.[15]

IV

In the present case, plaintiff and defendant were parties to a mortgage agreement that was extinguished by the foreclosure sale in August of 1989. At the time defendant redeemed from the construction lien foreclosure sale, there was no contract out of which an equitable lien could have been established. Defendant did not form an agreement with plaintiff regarding the effect of the redemption from the construction lien foreclosure sale on plaintiff's right of redemption from defendant's foreclosure sale. No fraud, accident, or mistake is alleged in this case. Had defendant redeemed from the construction lien foreclosure sale before foreclosing on the mortgage, it could have added to the mortgage debt the amount paid to redeem, thereby recovering that amount at the

---

[15] Compare *Hopkins v Sanders,* 172 Mich 227; 137 NW 709 (1912), in which equitable circumstances were considered by the Court in establishing an equitable lien for taxes paid by the mortgagee that were due before the execution of the mortgage. The mortgagee brought foreclosure proceedings rather than foreclosing the mortgage by advertisement.

mortgage foreclosure sale. Even after the fore-
closure by advertisement was begun, it could have
been adjourned pursuant to MCL 600.3220; MSA
27A.3220, to allow the redemption period from the
construction lien foreclosure sale to pass before
conducting the mortgage foreclosure sale. Defen-
dant could then have added to the mortgage debt
and the mortgage foreclosure sale bid any amount
it expended to redeem the property from the con-
struction lien foreclosure sale.[16]

Although a general notion of injustice might
appear to support defendant's assertion that plain-
tiff is receiving a windfall at defendant's expense,
under the strict requirements of the statute, plain-
tiffs are not required to reimburse defendants for
that amount. The choice by defendant regarding
the timing and manner of the foreclosure sale
exposed it to the risk that plaintiff would redeem
from the mortgage foreclosure sale without being
held responsible for payment of the redemption
expenses. Because there is no fraud, accident, or
mistake, the clear language of MCL 600.3240;
MSA 27A.3240 must control and defendants are
entitled only to the mortgage foreclosure sale bid

---

[16] In 1 Cameron, Michigan Real Property Law: Principles and
Commentary, § 18.80, p 648, the author cautions lenders to order a
title report before a foreclosure sale by advertisement.

> Priorities between mortgagees and construction lien claim-
> ants are ordinarily determined in judicial proceedings for the
> foreclosure of the lien or the mortgage. This is one important
> reason why a lender should have his title work upon the
> mortgaged premises brought up to date not only at the time of
> the notice of the foreclosure sale, but also just before the sale.
> If construction liens appear, the merits of proceeding with a
> foreclosure by advertisement are highly questionable because of
> the priorities problem.

Likewise, nonmortgagee purchasers at a foreclosure by advertisement
should undertake a title search before purchasing at the sale in order
to protect themselves from purchasing encumbered property and
incurring preservation costs for which they might not be reimbursed.

plus interest and any taxes and insurance properly paid during the redemption period.

The decision of the Court of Appeals is reversed.

CAVANAGH, C.J., and LEVIN, BRICKLEY, BOYLE, GRIFFIN, and MALLETT, JJ., concurred with RILEY, J.