# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

CLARA CARTER,

        Plaintiff-Appellant,

v

BAC HOME LOANS SERVICING LP and
FEDERAL NATIONAL MORTGAGE
ASSOCIATION, a/k/a FANNIE MAE,

        Defendants-Appellees.

UNPUBLISHED
March 26, 2015

No.  318622
Wayne Circuit Court
LC No.  12-009051-CH

Before:  CAVANAGH, P.J., and METER and SHAPIRO, JJ.

SHAPIRO, J. (*dissenting*).

I respectfully dissent as I believe there is a question of fact, sufficient to survive summary disposition, as to whether there was an irregularity in the foreclosure process sufficient to allow an equitable extension of the redemption period.

In 2001, plaintiff borrowed $30,000 from First Class Financial Corporation and provided a mortgage to it as security.  The loan and mortgage were later assigned to Bank of America (BOA).  From the record, it appears that plaintiff complied with all provisions of the mortgage until May 2010 and that, during those nine years, she had, in addition to paying 7.625% interest, reduced the principal of the loan to $21,437.57.

Maintenance of homeowner's insurance was required under the mortgage.  On May 30, 2010, BOA sent plaintiff a letter indicating that it had learned that the insurance policy had expired on May 14, 2010 and advising plaintiff that she must provide proof of continued insurance.

On June 13, 2010, BOA sent plaintiff a letter stating that it had not yet received proof of insurance and that, as a result, it would purchase insurance coverage for the period of May 14, 2010 to May 14, 2011 unless plaintiff provided proof of insurance within 35 days.  It advised that the cost of such coverage would be charged to plaintiff's escrow account and "your monthly payment will be adjusted accordingly."

On July 21, 2010, BOA sent plaintiff a letter stating that it had purchased homeowners insurance on the property in a coverage amount of $225,000, at a cost of $3,417.  The letter further advised that if plaintiff's loan amount was less than that coverage amount (which it was),

plaintiff could return the form, with a signature, to reduce BOA's purchase of coverage to an amount equal to the amount of the loan and noted that such a reduction would not provide coverage on her equity. Plaintiff did not submit the offered form. The letter also stated that BOA would cancel the insurance it purchased as of the effective date of a policy purchased by plaintiff. It also provided that the costs of the policy would be billed to plaintiff's escrow account.

On December 17, 2010, BOA sent plaintiff a "Notice of Intent to Accelerate." It stated that the amount in arrears was $611.66, which appears to reflect the additional monthly escrow charge for the insurance and a late fee. It advised that in order to cure the default, plaintiff would have to pay the amount in arrears by January 16, 2011, or the loan would be accelerated.

On January 18, 2011, plaintiff faxed BOA proof that she had purchased a year's policy of homeowner's insurance on the house, effective August 31, 2010.

On January 27, 2011, a professional corporation named Trott & Trott sent a letter on its letterhead to plaintiff indicating that "it represents BAC Home Loans Servicing [(BAC)]" and stating that plaintiff's "creditor" had "elected to accelerate the total indebtedness" which totaled $24,295.41 (which included the full amount of the insurance premium paid by BOA). BOA was not mentioned by name in the Trott & Trott letter.

On January, 29, 2011, a notice of sale was posted on plaintiff's property, setting March 2, 2011 as the date of sale. This notice was also published in the newspaper on January 28, February 4, February 11, and February 18, 2011.

As evidenced by an Affidavit of Auctioneer, the property was sold on March 2, 2011 to BAC for $1,800 and advising that redemption was available for six months.

The record contains no evidence of subsequent communications to plaintiff from either BAC or Trott & Trott.

On March 21, 2011, however, a letter was sent to plaintiff on *Bank of America* letterhead stating that it had received plaintiff's proof of insurance (that plaintiff had provided two months earlier) and that, as a result, "the Lender-Placed Hazard Insurance on your loan for the term 5/14/2010 through 5/14/2011 has been flat cancelled. A partial refund in the amount of $1,020 will post to your loan. This is in addition to a partial refund in the amount of $2,397.00 which also posted to your loan." Under a heading entitled "**WHAT THIS MEANS**," the letter stated in full: "We apologize for any inconvenience that you may have experienced." The letter further stated, "You are a valued customer here at BAC Home Loans Servicing, LP." The letter made no reference to the foreclosure or sheriff's sale, nor that it was BOA's position that plaintiff no longer owned the property.

The redemption period expired on September 2, 2011.

At some point thereafter, BAC brought an eviction action in district court and plaintiff, in turn, filed the instant case in circuit court challenging the foreclosure. BAC brought a motion to dismiss on the grounds that since the redemption period had expired, plaintiff lacked standing to bring suit. Plaintiff argued that the proofs would show that plaintiff had in fact always

maintained homeowner's insurance and that she "steadfastly contacted the bank" but that "the bank is impossible to deal with . . . [that the bank engaged in] an ongoing failure to accept the documentation from my client or the phone calls from my clients stating that we have insurance." Her counsel advised the court that plaintiff had continued to make escrow payments up through the date of the hearing. At the hearing, the trial court indicated her displeasure with the situation, stating "the whole thing stinks," but noted that the period for redemption had passed. She indicated that she would issue a written opinion.

That opinion was issued on September 4, 2013. It stated that "there is a question of fact regarding whether or not the lender actually received proof that Plaintiff obtained homeowners' insurance. . . . Nevertheless, summary disposition is granted . . . because the redemption period has long since expired and title has vested in the purchaser BAC Home Loans." The court went on to state that "there is no evidence of fraud or irregularity in the foreclosure proceedings that would compel this court to set aside the foreclosure."

I would reverse summary disposition and remand for an evidentiary hearing to determine whether there was an irregularity sufficient to equitably extend the redemption period.[1] After the sheriff's sale, plaintiff received the March 21, 2011 letter from BOA, a reasonable reading of which could lead a homeowner to believe that the proofs she submitted had resolved the issue, that no further monies were presently due, and that she still owned her home. This letter came from BOA, the actual creditor.[2]

It is impossible to know from the record before us whether there were other communications in which this view was further emphasized or if, to the contrary, plaintiff did understand that her home had been sold and that the redemption period continued to run. After hearing the relevant evidence, the trial court should determine whether a reasonable borrower could have concluded that she retained ownership of her home and did not need to redeem it. If so, the case should be reinstated.

Accordingly, I respectfully dissent.

/s/ Douglas B. Shapiro

---

[1] A redemption period may be equitably extended in cases involving a clear showing of fraud or irregularity. See, e.g., *Senters v. Ottawa Savings Bank, FSB,* 443 Mich 45, 56-57; 503 NW2d 639 (1993); *Schulthies v Barron,* 16 Mich App 246, 247-248; 167 NW2d 784 (1969).

[2] It seems that BOA, BAC, and Trott & Trott were each communicating with plaintiff without copying each other despite the fact that they would appear to have had a unity of interest regarding plaintiff. At least, there is no "cc:" on any of their letters to indicate that they were copying each other. The reason for this failure to speak with a single voice is not apparent and would appear to be simply a matter of convenience for their offices. I do not think it unreasonable, based on this record, for plaintiff to have concluded that the communications from BOA, i.e., the actual creditor, were controlling.