*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

1373 MOULIN, LLC,

        Plaintiff-Appellant,

v

DEANA WOLF, WILMINGTON FINANCE, INC., and LITTON LOAN SERVICING, LP,

        Defendants,

and

DYCK O'NEAL, INC., PHH MORTGAGE SERVICES, and ARVIND MALAVIA,

        Defendants-Appellees.

FOR PUBLICATION
May 26, 2022
9:15 a.m.

No. 360569
Oakland Circuit Court
LC No. 2021-191312-CH

Before: SWARTZLE, P.J., and CAMERON and PATEL, JJ.

CAMERON, J.

Plaintiff 1373 Moulin, LLC, brought this action to determine title to real property located at 1373 Moulin in Madison Heights, Michigan (the property). Plaintiff appeals the trial court's March 7, 2022 order, which denied plaintiff's motion for summary disposition and granted defendant Dyck O'Neal, Inc.'s cross-motion for summary disposition. We affirm.

## I. BACKGROUND

The question in this case is whether plaintiff received unencumbered title to the property or whether the property was subject to a mortgage interest held by Dyck O'Neal. In 2006, defendant Deana Wolf purchased the property. Wolf granted two mortgages to defendant Wilmington Finance, Inc. (Wilmington), to secure debts for $91,500 (the first mortgage) and $30,500 (the second mortgage), respectively. In 2008, Wolf defaulted on the first mortgage. Wilmington's successor, defendant Litton Loan Servicing, LP (Litton), initiated proceedings for

foreclosure by advertisement. On December 9, 2008, Litton obtained a sheriff's deed for the property. The redemption period was set to expire on June 9, 2009.

On February 9, 2009, Denise Bailey, on behalf of Litton, executed an affidavit. It provides in relevant part:

> 4. That Litton Loan Servicing LP, has made an agreement with Deana Wolf, a single woman, that under certain terms and conditions, it would agree to set aside the sheriff's sale, thus reinstating and reviving the [first] mortgage.

> 5. That Deana Wolf, a single woman, has complied with those terms and conditions set down by Litton Loan Servicing LP.

> 6. That having complied with Litton Loan Servicing LP['s], terms and conditions, Litton Loan Servicing LP, agrees to set aside the . . . Sheriff's Deed, making it void and of no force or effect, thus reinstating and reviving the [first] mortgage and Note, as if the foreclosure had not occurred.

> 7. That this affidavit is to be recorded in order to perfect record title, and to show that the Sheriff's Deed on Mortgage Sale, dated December 9, 2008, and recorded December 16, 2008 . . . is void and of no force or effect.

> 8. That the [first] mortgage . . . is hereby reinstated and is again in full force and effect.

The affidavit was recorded. Wolf continued to possess the property and made payments on the first mortgage. It is unclear whether Wolf made payments on the second mortgage.

In May 2020, Wolf and plaintiff entered into a purchase agreement concerning the property. Devon Title Agency (Devon) prepared the closing documents. The Commitment for Title Insurance included requirements that both mortgages be discharged. Devon's escrow agreement provided for a payoff of $52,894.50 for the first mortgage and a payoff of $35,000 for the second mortgage. The closing took place in August 2020, and a total of $87,894.50 was withheld from the sale proceeds. On August 25, 2020, a warranty deed conveying the property from Wolf to plaintiff was recorded. Devon issued a $52,894.50 payment to defendant PHH Mortgage Services (PHH) with a request that the first mortgage be paid in full.[1] In October 2020, Mortgage Electronic Registration Systems, Inc., as nominee for Wilmington, issued and recorded a statement of discharge for the first mortgage. The statement of discharge made no mention of the second mortgage, and Wolf later requested a payoff statement concerning the second mortgage.

In November 2020, Dyck O'Neal, acting as a debt collector, notified Wolf that she owed a debt of $74,723.68 on the second mortgage. Payments were not made. After the second mortgage was assigned to Dyck O'Neal, Dyck O'Neal initiated foreclosure proceedings.

---

[1] The balance of $35,000 remained in escrow.

In November 2021, plaintiff filed suit against Wolf, Dyck O'Neal, Wilmington, Litton, and PHH. In relevant part, plaintiff alleged that the February 2009 affidavit was ineffective to set aside the mortgage foreclosure sale, thereby resulting in the second mortgage being extinguished. Plaintiff sought an order declaring that it held "absolute fee title" to the property, declaring that the property was not encumbered by the second mortgage, and requiring Wilmington, Litton, and PHH to "take all necessary actions to vest legal title in [plaintiff]." Plaintiff also sought compensation for "litigation costs, impairment of vendability, [and] lost rents and interest" under MCL 565.108. Dyck O'Neal filed a cross-claim against Wolf for breach of contract. Dyck O'Neal requested a declaration that the second mortgage was a valid and enforceable lien against the property.[2]

On November 30, 2021, defendant Arvind Malavia purchased the property at a sheriff's sale. On December 6, 2021, plaintiff filed a first-amended complaint, which named Malavia as a defendant. The allegations remained essentially unchanged.

Plaintiff moved for summary disposition, and Dyck O'Neal filed a cross-motion for summary disposition. The parties' motions mainly focused on the validity of the February 2009 affidavit and whether the second mortgage was extinguished in 2009. On March 7, 2022, the trial court denied plaintiff's motion for summary disposition, granted Dyck O'Neal's cross-motion for summary disposition, and dismissed all of the parties and all of the claims. This appeal followed.

## II. JURISDICTIONAL CHALLENGE

At the outset, we must address Malavia's argument that this Court lacks jurisdiction to decide this case because plaintiff is not an aggrieved party. We conclude that Malavia's argument is without merit.

This Court reviews de novo whether it has jurisdiction. *Chen v Wayne State Univ*, 284 Mich App 172, 191; 771 NW2d 820 (2009). MCR 7.203(A)(2) provides that this Court "has jurisdiction of an appeal of right *filed by an aggrieved party* from" "[a] judgment or order of a court or tribunal from which appeal of right to the Court of Appeals has been established by law or court rule." (Emphasis added.) "An aggrieved party is not one who is merely disappointed over a certain result. Rather, . . . a litigant must have suffered a concrete and particularized injury. . . ." *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 291; 715 NW2d 846 (2006) (footnote omitted). "[A] litigant on appeal must demonstrate an injury arising from . . . the actions of the trial court . . . rather than an injury arising from the underlying facts of the case." *Id*. at 292 (citations omitted). As stated in *Grace Petroleum Corp v Pub Serv Comm*, 178 Mich App 309, 312-313; 443 NW2d 790 (1989):

> An appeal can only be taken by parties who are affected by the judgment appealed from. There must be some substantial rights of the parties which the judgment would prejudice. *A party is aggrieved by a judgment or order when it operates on his rights and property or bears directly on his interest. To be aggrieved, one must have some interest of a pecuniary nature in the outcome of the*

---

[2] A default was later entered against Wolf.

*case, and not a mere possibility arising from some unknown and future contingency.* [Citations omitted; emphasis added.]

Additionally, "MCL 600.2932(1) reflects the Legislature's intent to confer standing on individuals claiming an interest in real property. The statute authorizes suits to determine competing parties' respective interests in land[.]" *Trademark Props of Mich, LLC v Fed Nat'l Mtg Ass'n*, 308 Mich App 132, 137; 863 NW2d 344 (2014) (quotation marks and citation omitted; alteration in original). See also *Wilmington Savings Fund Society v Clare*, 323 Mich App 678, 685; 919 NW2d 420 (2018).

In this case, plaintiff argues that it has fee simple interest in the property and that Dyck O'Neal and Malavia do not have interests in the property because the second mortgage was extinguished. The trial court disagreed with plaintiff and entered an order, which effectively resulted in a declaration that the second mortgage was a valid and enforceable lien against the property. Because the trial court's order "operates on [plaintiff's alleged] rights and property" and because plaintiff has a pecuniary interest in the outcome of this case, we conclude that plaintiff is an aggrieved party.

While plaintiff is not entitled to relief for the reasons discussed later in this opinion, the fact that plaintiff did not have viable claims does not deprive plaintiff of standing. See *Trademark Props of Mich, LLC*, 308 Mich App at 136-137 ("Standing in no way depends on the merits of the case. When a cause of action exists under law, or when the Legislature has expressly conferred standing, those circumstances are sufficient to establish standing.") (Quotation marks and citations omitted.) Malavia's jurisdictional argument therefore fails.

## III. MOOTNESS

Malavia argues that this Court should dismiss the instant appeal as moot because the redemption period "terminated on April 4, 2022, pursuant to MCL 600.3238(10)." We decline to dismiss the appeal.

"Whether an issue is moot is a question of law that this Court reviews de novo. Michigan Courts exist to decide actual cases and controversies. . . . A matter is moot if [a] Court's ruling cannot for any reason have a practical legal effect on the existing controversy." *Bailey v Antrim Co*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357838); slip op at 3 (quotation marks and citations omitted; alternations in original).

On November 30, 2021, Malavia purchased the property at a sheriff's sale, and the redemption period was set to expire on May 30, 2022. Prime Property Investors, on behalf of Malavia, served a notice of inspection on plaintiff and "All Occupants." The notice stated that Malavia had purchased the property at a foreclosure sale and requested "the rightful opportunity to conduct an interior inspection of the property pursuant [to] MCL 600.3237 and MCL 600.3238" on December 3, 2021. Plaintiff responded that Malavia's sheriff's deed related "to a junior mortgage that was discharged . . . following foreclosure of a senior mortgage held by Wilmington Finance, Inc." Plaintiff alleged that Malavia's claim of ownership for the property was therefore "invalid" and requested that Malavia "cease and desist all efforts to . . . assert rights under the November 30, 2021 sheriff's deed."

-4-

Malavia filed a summary proceeding action for possession in the 43rd District Court. On April 4, 2022, the district court entered a judgment of possession in favor of Malavia. The order permitted Malavia to obtain an order of eviction if plaintiff and other occupants did not vacate the premises on or before April 14, 2022.

MCL 600.3238, which governs foreclosures of real estate mortgages by advertisement, states in relevant part:

> (1) After a foreclosure sale under this chapter and providing notice under [MCL 600.3237], the purchaser at the sale may inspect the property, including the exterior and interior of any structures on the property, as provided in this section.
>
> (2) The purchaser may conduct an initial inspection of the interior of any structures on the property. In addition to the notice provided in [MCL 600.3237], the purchaser shall provide notice to the mortgagor by certified mail, physical posting on the property, or in any manner reasonably calculated to achieve actual notice of the purchaser's intent to inspect the property at least 72 hours in advance and shall set the time of the inspection at a reasonable time of day, in coordination with the mortgagor if possible.
>
> * * *
>
> (6) If an inspection under this section is unreasonably refused or if damage to the property is imminent or has occurred, the purchaser may immediately commence summary proceedings for possession of the property under [MCL 600.5701 *et seq*.] or file an action for any other relief necessary to protect the property from damage. If a purchaser commences an action for possession or any other relief under this section, the purchaser may also name as a party to the action any person who may redeem the property under [MCL 600.3240].
>
> (7) Before commencing summary proceedings for possession of the property under this section, the purchaser shall provide notice to the mortgagor by certified mail, physical posting on the property, or in any other manner reasonably calculated to achieve actual notice, that the purchaser intends to commence summary proceedings if the damage or condition causing reasonable belief that damage is imminent is not repaired or corrected within 7 days after receipt of the notice.
>
> * * *
>
> (10) If a judgment for possession is entered in favor of the purchaser in an action under [MCL 600.5701 *et seq*.] as described in [MCL 600.3238(6)], the right of redemption under [MCL 600.3240] is extinguished and title to the property vests in the purchaser as provided in [MCL 600.3236] as to all persons against whom judgment was entered.

Thus, a purchaser at a foreclosure sale is permitted to inspect the property if the purchaser provides the proper notice. MCL 600.3238(1). "If an inspection . . . is unreasonably refused," the

purchaser is permitted to "immediately commence summary proceedings for possession of the property under [MCL 600.5701 *et seq.*]" MCL 600.3238(6). "If a judgment of possession is entered in favor of the purchaser," "the right of redemption . . . is extinguished and title to the property vests in the purchaser . . . as to all persons against whom judgment was entered." MCL 600.3238(10).

In this case, the district court entered a judgment of possession. However, plaintiff filed an appeal from that order, and the appeal is currently pending in Oakland County Circuit Court. Consequently, because the district court's decision to enter the judgment of possession could be overturned and because Malavia's interest in the property hinges on the legal effect of the February 2009 affidavit, we will consider plaintiff's argument on appeal.[3]

## IV. LEGAL EFFECT OF THE AFFIDAVIT

Plaintiff argues that the trial court erred by granting summary disposition in favor of Dyck O'Neal. According to plaintiff, the February 2009 affidavit did not have legal effect and the second mortgage was extinguished, thereby leaving Dyck O'Neal without an interest in the property. We disagree.

## A. STANDARDS OF REVIEW AND GENERAL PRINCIPLES OF LAW

"Actions to quiet title are equitable in nature, and equitable rulings are reviewed de novo." *Houston v Mint Group, LLC*, 335 Mich App 545, 557; 968 NW2d 9 (2021). A trial court's decision regarding a motion for summary disposition is also reviewed de novo. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020). Although the trial court did not specify the grounds for granting Dyck O'Neal's motion for summary disposition and for denying plaintiff's motion for summary disposition, it relied on documentary evidence to support its decisions. Accordingly, MCR 2.116(C)(10) is the appropriate basis for review. See *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 582; 794 NW2d 76 (2010) ("Where the parties rely on documentary evidence, appellate courts proceed under the standards of review applicable to a motion made under MCR 2.116(C)(10).") (Quotation marks and citation omitted).

A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the

---

[3] In so indicating, we are in no way commenting on the district court's April 4, 2022 decision to enter the judgment of possession. Indeed, that issue is not directly before us. We are also not considering plaintiff's arguments that the November 2021 sheriff's sale is void because of Dyck O'Neal's alleged failure "to comply with the foreclosure statute. . . ." Plaintiff did not seek to set aside the foreclosure in the first-amended complaint. See *Bailey*, ___ Mich App at ___; slip op at 6 ("A party is bound by [its] pleadings, and it is not permissible to litigate issues or claims that were not raised in the complaint. . . .") (quotation marks and citation omitted; second alteration in original).

record leaves open an issue upon which reasonable minds might differ. [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (quotation marks, citations, and emphasis omitted).]

This Court "review[s] de novo a trial court's interpretation and application of a statute." *City of Grand Rapids v Brookstone Capital, LLC*, 334 Mich App 452, 457; 965 NW2d 232 (2020). "The primary goal of statutory interpretation is to give effect to the intent of the Legislature. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted." *Mich Head & Spine Institute, PC v Mich Assigned Claims Plan*, 331 Mich App 262, 272; 951 NW2d 731 (2019) (quotation marks and citations omitted).

## B. ANALYSIS

An action to quiet title is equitable in nature and is "available to a party in possession of real property who [seeks] to clear the property's title as against the world." *Adams v Adams*, 276 Mich App 704, 711; 742 NW2d 399 (2007). In a quiet title action, the plaintiff "has the initial burden of establishing a prima facie case of title." *Special Prop VI v Woodruff*, 273 Mich App 586, 590; 730 NW2d 753 (2007). If the plaintiff establishes a prima facie case of title, the burden shifts to the defendant to prove superior right or title. *Qualified Personal Residence Trust v Emmet Co Rd Comm*, 236 Mich App 546, 550; 600 NW2d 698 (1999).

In this case, plaintiff sought a declaration that it holds fee simple title independent from the second mortgage, which plaintiff alleges was extinguished after the 2008 foreclosure. We conclude that the trial court properly granted summary disposition in favor of Dyck O'Neal on this claim.

In 2006, Wolf granted two mortgages. In 2008, Wolf defaulted on the first mortgage, and Litton initiated proceedings for foreclosure by advertisement. On December 9, 2008, Litton obtained a sheriff's deed for the property. The redemption period was set to expire on June 9, 2009. Thus, Wolf had six months after the sale was completed to "redeem the property by paying the requisite amount. . . ." See *Bryan v JP Morgan Chase Bank*, 304 Mich App 708, 713; 848 NW2d 482 (2014). If Wolf failed to do so, the sheriff's deed would "become operative," title would vest in Litton, and all of Wolf's "rights in and to the property [would be] extinguished." See *id*. (quotation marks and citation omitted). Additionally, the second mortgage would have been extinguished. See *In re $55,336.17 Surplus Funds*, 319 Mich App 501, 509 n 1; 902 NW2d 422 (2017) (a junior mortgagee's interests in property are extinguished after the statutory redemption period expires and after the mortgagor fails to redeem the property).

Before the redemption period expired, however, a representative of Litton executed an affidavit, which provides in relevant part as follows:

> 4. That Litton Loan Servicing LP, has made an agreement with Deana Wolf, a single woman, that under certain terms and conditions, it would agree to set aside the sheriff's sale, thus reinstating and reviving the [first] mortgage.

> 5. That Deana Wolf, a single woman, has complied with those terms and conditions set down by Litton Loan Servicing LP.

6. That having complied with Litton Loan Servicing LP['s], terms and conditions, Litton Loan Servicing LP, agrees to set aside the . . . Sheriff's Deed, making it void and of no force or effect, thus reinstating and reviving the [first] mortgage and Note, as if the foreclosure had not occurred.

7. That this affidavit is to be recorded in order to perfect record title, and to show that the Sheriff's Deed on Mortgage Sale, dated December 9, 2008, and recorded December 16, 2008 . . . is void and of no force or effect.

8. That the [first] mortgage . . . is hereby reinstated and is again in full force and effect.

The affidavit was recorded. Thereafter, Wolf continued to possess the property until the property was sold to plaintiff in 2020. It is undisputed that Wolf made payments on the first mortgage during the time that she possessed the property and that Wolf paid off the first mortgage when she sold the property to plaintiff.

On appeal, plaintiff does not challenge the validity of Wolf and Litton's underlying agreement to set aside the foreclosure sale, invalidate the sheriff's deed, and reinstate the first mortgage. Rather, plaintiff argues that the February 2009 affidavit did not have legal effect under MCL 565.451a(b), which provides:

An affidavit stating facts relating to any of the following matters that may affect the title to real property in this state and made by any person having knowledge of the facts and competent to testify concerning those facts in open court may be recorded in the office of the register of deeds of the county where the real property is situated:

* * *

(b) Knowledge of the happening of any condition or event that may terminate an estate or interest in real property.

Because the statute does not define "condition" or "event," it is proper to consult dictionary definitions. See *Salem Springs, LLC v Salem Twp*, 312 Mich App 210, 218; 880 NW2d 793 (2015). *Random House Webster's College Dictionary* (1997), defines "condition" as "a restricting, limiting, or modifying circumstance," and "event" as "something that happens or is regarded as happening; an occurrence, esp. one of some importance."

In *Wilmington Savings Fund Society v Clare*, this Court considered whether an "expungement affidavit" filed under MCL 565.451a(b) could serve to expunge a foreclosure sale and revive an extinguished mortgage. *Clare*, 323 Mich App at 686-690. The *Clare* Court held as follows:

The plain language of [MCL 565.451a(b)] does not include any indication that an affidavit may be used to *create* a condition. It necessarily follows that a party cannot unilaterally revoke a foreclosure sale by recording an affidavit that is itself the claimed condition. There is no statutory basis for concluding that the

-8-

Legislature intended for a party to be able to rescind a foreclosure sale and revive a mortgage by merely recording an affidavit that it "agrees" to do so. We may not read language into unambiguous statutes. [*Id*. at 689 (citation and footnote omitted).]

Thus, the *Clare* Court held that "a party cannot set aside a foreclosure sale simply through the unilateral filing of an expungement affidavit." *Id*. at 687.

Unlike the mortgagee in *Clare*, a representative of Litton filed an affidavit that stated facts about a "happening of [an] . . . event" that affected Litton and Wolf's interest in the property. Specifically, the representative averred that Litton had reached an agreement with Wolf that "it would agree to set aside the sheriff's sale, thus reinstating and reviving the [first] mortgage" if Wolf complied with certain conditions. Wolf complied with the conditions, which then resulted in the execution and the recording of the affidavit. Thus, unlike the affidavit in *Clare*, the affidavit in this case did not create the condition that affected an interest in the property. Rather, Wolf and Litton's independent agreement created the condition, and the affidavit merely stated facts concerning the representative's knowledge of that agreement.

Additionally, at the time the affidavit was executed and recorded, Wolf still had a present interest in the property as the holder of the redemption rights. See *In re $55,336.17 Surplus Funds*, 319 Mich App at 509 n 1 (a mortgagor does "not lose all interest in the property until the time for redemption under the foreclosure decree [has] expired"). See also *Senters v Ottawa Savings Banks, FSB*, 443 Mich 45, 50; 503 NW2d 639 (1993) ("If the mortgagee purchases the property at the [foreclosure] sale, it stands in the position of an ordinary purchaser and obtains an ownership interest in the land, subject to the mortgagor's opportunity of redemption."). This is unlike the mortgagor in *Clare*. Indeed, the affidavit in *Clare* was filed *years* after the redemption period had expired and after the mortgagee that had purchased the property purported to convey the property to another entity. *Clare*, 323 Mich App at 681-682. While plaintiff argues that the affidavit was unilaterally filed because only a representative from Litton signed it, the assertions in the affidavit and the fact that Wolf continued to retain possession of the property while making payments on the first mortgage supports that the parties had reached a mutual agreement. Additionally, as already stated, Wolf paid off the first mortgage in 2020 after she sold the property to plaintiff. There is no indication in the record that Wolf had ever argued that the agreement with Litton was invalid. In sum, the affidavit contained information within the scope of MCL 565.451a(b) and therefore had legal effect.[4]

Because the undisputed evidence establishes that the second mortgage was not extinguished in 2009, Dyck O'Neal had an interest in the property by virtue of the lien. Therefore, the trial court did not err by granting summary disposition in favor of Dyck O'Neal on the quiet title claim and did not err by granting summary disposition in favor of Dyck O'Neal on the slander of title claim. See *B & B Investment Group v Gitler*, 229 Mich App 1, 8; 581 NW2d 17 (1998)

---

[4] Plaintiff also relies on Michigan Land Title Standard 16.46 (5th ed), to support that the affidavit lacked legal effect. However, Standard 16.46 is an adoption of *Clare* and therefore does not alter our conclusion.

("To establish slander of title . . ., a plaintiff must show *falsity*, malice, and special damages, i.e., that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages.") (Emphasis added.) Given this holding, it is unnecessary to consider the parties' remaining arguments on appeal.[5]

Affirmed.

/s/ Thomas C. Cameron
/s/ Brock A. Swartzle
/s/ Sima G. Patel

---

[5] We note that Malavia has requested that sanctions be imposed against plaintiff pursuant to MCR 7.216(C). Sanctions for a vexatious appeal may be awarded on this Court's own initiative or when a party files a motion under MCR 7.211(C)(8). MCR 7.216(C)(1). However, "[a] party's request for damages or other disciplinary action under MCR 7.216(C) must be contained in a motion. . . . A request that is contained in any other pleading, including a brief filed under MCR 7.212, will not constitute a motion. . . ." MCR 7.211(C)(8). Thus, a request for sanctions for a vexatious appeal must be made in a proper motion. *Prentis Family Foundation v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 60; 698 NW2d 900 (2005). There is no indication that Malavia has separately filed a motion for sanctions at the appellate level. Therefore, we decline to address the issue of whether sanctions are warranted at this time.